96  494
126 589

[No. 14366.  In Bank. — November 22, 1892.]

SAMUEL TREWATHA, RESPONDENT, *v.* THE BU-CHANAN GOLD MINING AND MILLING COM-PANY, APPELLANT.

NEGLIGENCE — MASTER AND SERVANT — CARELESSNESS OF ENGINEER OF MINING COMPANY — INJURY TO WORKMAN. — An engineer of a mining company, employed to operate an engine and hoisting-tackle, used upon and in connection with the main shaft of the mine, to hoist the rock and *débris* therefrom, and to raise and lower the miners, is a fellow-servant with a workman in the mine; and the mining company is not liable for damages for injuries received by a workman, caused by the negligence of the engineer in hoisting him, in the absence of proof that the company neglected to use ordinary care in the selection of the engineer.

ID. — PROXIMATE CAUSE OF INJURY — NEGLIGENCE OF FELLOW-SERVANT — DEFECTIVE APPLIANCES — MISLEADING INSTRUCTION. — Where it clearly appears that the immediate and proximate cause of the injury to the work-man was the negligence of the engineer, no recovery can be had by the injured party, even though the machinery and appliances were defective, and an instruction, in such case, which ignores this rule, and grounds a recovery upon the existence of defective appliances, is misleading and erroneous.

APPEAL from a judgment of the Superior Court of Tuolumne County, and from an order denying a new trial.

The facts are stated in the opinion.

*James H. Budd,* and *E. A. Rodgers,* for Appellant.

The plaintiff having been injured through the negligence of a fellow-servant, the defendant is not liable for the injuries received. (Civ. Code, sec. 1970; *Collier* v. *Steinhart,* 51 Cal. 116; *Kevern* v. *Providence Gold etc. Min. Co.,* 70 Cal. 392; *McLean* v. *Blue Point Gravel Co.,* 51 Cal. 255; *Murray* v. *South Carolina R. R. Co.,* 1 McMull. 385; 36 Am. Dec. 279.) Even though the appliances are defective, yet if the promoting cause of the injury is the negligence of a fellow-servant, no recovery can be had. (Wood on Master and Servant, 812; *Kevern* v. *Providence Gold etc. Min. Co.,* 70 Cal. 392; *Malone* v. *Hawley,* 46 Cal. 413.) The plaintiff must be held to have assumed the risk. (Civ. Code, sec. 19; *Malone* v. *Hawley,* 46 Cal. 409; *Beeson* v. *Green Mountain Gold Min. Co.,* 57 Cal. 29, 30.)

*F. W. Street,* and *I. M. Kalloch,* for Respondent.

The defendant was liable, as it failed to furnish suitable appliances and competent fellow-servants of the plaintiff. (*Laning* v.·*New York etc. R. R. Co.,* 49 N. Y. 532; 10 Am. Rep. 417; *Baulec* v. *New York etc. R. R. Co.,* 59 N. Y. 359; *Pantzar* v. *Tilly Foster M. Co.,* 99 N. Y. 372; *Booth* v. *Boston etc. R. R. Co.,* 73 N. Y. 40; 29 Am. Rep. 97; *Beeson* v. *Green Mountain Gold Min. Co.,* 57 Cal. 29; *Mc-Kun* v. *California etc. R. R. Co.,* 66 Cal. 302; *Hough* v. *Railway Co.,* 100 U. S. 218; *Rodgers* v. *Leyden,* 127 Ind. 50.)

The COURT. — After full consideration of this cause in Bank, we are satisfied with the conclusion reached in Department Two, and with the opinion prepared in Department by Commissioner Belcher. For the reasons given in that opinion, the judgment and order appealed from are reversed, and the cause remanded.

The following is the opinion above referred to, rendered in Department Two on the 16th of December, 1891:—

BELCHER, C. — The plaintiff brought this action to recover damages for injuries received by him while he was employed in defendant's mine, known as the Buchanan Mine, in Tuolumne County. It is alleged in the complaint that, on the third day of June, 1889, the defendant was working its mine, and one James E. Donahue was the engineer employed by the defendant, and who at that time operated for the defendant its engine and hoisting-tackle used upon and in connection with the main shaft of the mine to hoist the rock and *débris* therefrom, and also to raise and lower the miners and other workmen working at the various levels connected with the main shaft; "that at said time said Donahue was incompetent, negligent, and destitute of ordinary skill as an engineer, and the defendant, at such time, and for a long time prior thereto, knew" such to be the fact; "that the defendant, on the said third day of June, 1889, was guilty of further carelessness and negligence, in that it did willfully and knowingly neglect and fail

to furnish said engineer with the necessary and proper appliances and means with which to properly and safely operate said engine and hoisting-works, and defendant at said time knew that said engineer was not supplied with the necessary and proper appliances," etc.; that on the third day of June, 1889, while Donahue was so acting as engineer, plaintiff was in the employment of defendant, and was working in what is known as the "two-hundred-foot level," connected with the main shaft of the mine, and having occasion to go up to the surface of the mine, in obedience to defendant's directions, and after having given to the engineer due notice thereof, he "got into the bucket connected with the said hoisting-tackle, whereupon said engineer, by means of said imperfect and unsafe appliances made use of by said defendant in connection with and for the purpose of operating said engine and hoisting-tackle, proceeded to hoist plaintiff from said two-hundred-foot level to the surface; and the said Donahue, engineer as aforesaid, negligently, carelessly, and wantonly, did hoist said plaintiff from said two-hundred-foot level with such wrongful, unlawful, and dangerous speed that the bucket in which plaintiff had placed himself as aforesaid was thrown with great violence against and over the sheave," whereby plaintiff was greatly injured, etc. The answer denied all the material averments of the complaint, and alleged that any injuries sustained by plaintiff were caused by his own negligence. The case was tried before a jury, and a verdict returned in favor of the plaintiff for four thousand dollars damages. The defendant moved for a new trial, on the ground that the verdict was not justified by the evidence, and that errors in law were committed by the court. The motion was denied, and this appeal was then taken from the judgment and order.

It appears from the evidence that the hoisting-engine was on the surface of the ground, and about forty or fifty feet from the mouth of the shaft. The hoisting-rope, or cable, was fastened to a drum, which was re-

volved by the engine, and ran thence over the sheave, or pulley, to and into the shaft. The sheave was about thirty feet above the mouth of the shaft, and the bucket was attached to the end of the rope, and by it let down into and drawn up from the mine. At the surface of the ground was a platform, where men riding up and down got out of or into the bucket, and six or seven feet above the surface was another platform, where the rock and dirt brought up was dumped. The methods of working the engine were simple and easily learned, and Donahue had been working it as engineer, on the night shift, since October, 1888. In the mine were five levels, from which drifts ran out, and the bucket was used, to hoist from the different levels rock and waste and the laborers employed there. Extending up through the shaft from the lower level was a cord which was attached to a bell hung near the engine. By pulling this, the bell was rung, and certain known signals given to hoist or stop or lower the bucket, and also to indicate whether the load to be hoisted was a man or rock. The signal from the two-hundred-foot level to hoist a man was three bells, and after a little interval, a fourth one. About the engine and platforms, lights were kept burning at night, to enable the engineer to see the machinery and watch all the movements. The plaintiff was at work at the two-hundred-foot level of the mine, on the night shift, and a little after twelve o'clock, had occasion to go to the surface. The bucket was going down the shaft, and was stopped at the two-hundred-foot level. Thereupon the plaintiff got into the bucket, and as he says, gave the proper signal to hoist him. The bucket started up, and for about forty feet rose slowly. It then began to go fast, and the plaintiff tried to reach out his hand and catch the cord, to signal the engineer to stop it, but whether he succeeded in doing so he does not know. It continued to rise rapidly, and instead of stopping at one of the platforms where it should have stopped, was hurled up against the sheave, and broken loose. The plaintiff was thrown down and badly injured.

The engineer was called as a witness for plaintiff, and testified: "The bell I got to hoist was one bell, which indicated that I should hoist anything but a man. . . . . When the one bell to hoist was given, I commenced slowly. I always commence slowly, to see that the bucket is not caught. Then I increased speed. I knew at the time I had something lighter than rock. Unless a man is aboard, no matter what is in the bucket, I hoist fast. I turned on the steam, when I hoisted Trewatha, as though for rock; had no idea a man was aboard. I failed to stop the engine; why, I don't know; it was done so quick." And on cross-examination the witness said: "Don't know what caused the accident. I started slowly, as usual. Had no idea a man was in, and turned on steam as if I was going to raise ore. Had I known a man was in the bucket, I would have hoisted slow. I don't know whether I tried to stop the engine, or not, before it ran the bucket into the sheave. There was nothing to prevent my stopping it, however."

1. That the injuries sustained by the plaintiff were caused by the negligence of the engineer is very clearly shown by the evidence; and the first question is, Can the plaintiff recover damages for injuries so caused? Section 1970 of the Civil Code provides: "An employer is not bound to indemnify his employee for losses suffered by the latter in consequence of the ordinary risks of the business in which he is employed, nor in consequence of the negligence of another person employed by the same employer in the same general business, unless he has neglected to use ordinary care in the selection of the culpable employee." The engineer was a fellow-servant with the plaintiff, employed by the same employer, in the same general business, and the evidence wholly fails to show that there was any neglect to use ordinary care in his selection. He had been engaged in running an engine for some years, and there was no proof that he had been careless in attending to his duties prior to the night of this accident. It follows, in our opinion, that the plaintiff was not entitled to recover on the ground

that his injuries were caused by the negligence of the engineer. (See *Collier* v. *Steinhart*, 51 Cal. 116; *McLean* v. *Mining Co.*, 51 Cal. 255; *Congrave* v. *Southern Pac. R. R. Co.*, 88 Cal. 360.)

2. It is said, in respondent's brief: " It is apparent from the allegations of the complaint that the injuries received by plaintiff were occasioned by the combined carelessness and negligence of the defendant in not supplying the necessary and proper appliances and means with which to operate the engine and hoisting-tackle, and carelessness of an engineer known by the defendant to be negligent and careless "; and it is claimed that the evidence as to the defective appliances was sufficient to justify the verdict. The appliances referred to were the lights about the engine and platforms, and the signal-bell and its attachments. As to the sufficiency of the lights, the evidence was somewhat conflicting, but the engineer testified:—

"Q. Had you sufficient light to run by? A. Yes, sir. " Q. The accident on this occasion was not due at all to the lack of light? A. No; I don't think it was. I had sufficient light to run by."

As to the bell, it was proved that the attachments sometimes got out of order, so that it did not always ring when the cord was pulled; and it was claimed by the plaintiff that, as he gave, or attempted to give, the proper signal to hoist a man, namely, three rings and then one, and the engineer heard but one ring, the attachments must have been out of order at that time, and hence the engineer was put off his guard, and the injury resulted. And in accordance with this theory, the court, at the request of plaintiff, instructed the jury as follows: " If you find from the evidence that the bell situated at or near the top of the main shaft of the Buchanan Mine, with its appliances and appurtenances, used by the miners and others in giving signals to the engineer in charge of the engine and hoisting-tackle, was not in proper working condition, and did not at all times give the signal intended when the rope was properly pulled for that pur-

pose, and that the defendant, or its superintendent or foreman, knew, or had the means of knowing, of said defect in said bell and its appliances, and that the plaintiff did not know, and had not equally with the defendant the means of knowing, of such defect in said bell or its appliances and appurtenances, and if you further find from the evidence that by reason of said bell not working properly, said Donahue was not able to determine the true signal given by the plaintiff, and that plaintiff did give the right signal for the hoisting of a man from the mine, and that by reason of said bell not giving the signal as rung by plaintiff, said Donahue hoisted the plaintiff from said mine with dangerous speed, and threw the bucket in which plaintiff had placed himself with great force against the sheave, whereby plaintiff was mangled, bruised, wounded, and injured, then you must find for the plaintiff." We do not think the verdict and judgment can be sustained, even if it be admitted that the appliances complained of were as defective as it is claimed they were. The immediate and proximate cause of the injury sustained by plaintiff was very clearly shown to have been the negligence of his co-employee; and this, as we understand it, is, in substance, the averment of the complaint. Nothing but carelessness can account for the fact that the engineer allowed the bucket to be hurled against the sheave, twenty-three feet above the upper platform, whether he supposed he was hoisting a man or something else. But the rule is, that where the promoting cause of the injury is the negligence of a fellow-servant, no recovery can be had, even though the machinery or appliances be defective. This was so declared in *Kevern* v. *Providence Gold etc. Min. Co.*, 70 Cal. 394, where the court said: "'The proximate cause of the injury is the object of inquiry, and when discovered, must be regarded and relied on.' (*Hayes* v. *Western R. R. Corp.*, 3 Cush. 274.) Even where machinery is defective, so that otherwise a recovery might be had for an injury received, yet if the promoting cause of the injury is the negligence of a fellow-servant, no recovery can be had.

(Wood on Master and Servant, 812.)   The same rule must apply where the appliances for doing work are defective." The instruction quoted ignores this rule, and was therefore misleading and erroneous.   We advise that the judgment and order be reversed, and the cause remanded.

TEMPLE, C., and VANCLIEF, C., concurred.