Statement of Case'.
NICHOLLS, J.
This is a suit for damages for personal injuries sustained by the plaintiff to the amount of $5,000. He alleges: That on the 15th of November, 1904, he was working with a gang of screwmen stowing cotton in the hold of the steamship Chancellor, lying at Chalmette, in the parish of St. Bernard. That between .the hours of 7 and 8 o’clock on the morning of that day, while petitioner was so engaged and working as a screwman in the aft, or compartment No. 3, of said steamship Chancellor, lying at Chalmette, in the parish of St. Bernard, a bale of cotton fell out of the sling attached to the derrick, operated by defendant, his agents, servants, and employés, from the top of the hatch of said vessel, down into the hold, bounced and struck petitioner on the right hip bone, breaking -and snapping a portion thereof, and rendering petitioner insensible for about five minutes. He was removed from said vessel into a wagon to the slaughter house by his brother and father, and was taken from the slaughter house to the Charity Hospital, in this city, in the hospital ambulance. That the surgeons of said Charity Hospital performed a surgical operation upon petitioner, setting the broken bone.
That petitioner remained in the Charity Hospital about four weeks. That he suffered severe pain and agony, both mental and physical, caused by said personal injuries so sustained by him as above recited, and for which defendant is liable. That the injury inflicted upon petitioner is of a permanent character.
That William J. Kearney was the stevedore employed to load said vessel, and in charge of the gang operating the derrick at the time, from which said bale of cotton fell into the aft compartment No. 3 of said vessel, by which petitioner was injured as aforesaid.
Now petitioner charges'and avers that the said William J. Kearney, the stevedore, his agents, servants, and employés operating said derrick and its appliances, were guilty of gross negligence and fault, want of due care and ordinary skill: First. That the bales of cotton were not well fastened and secure in the sling attached to said derrick, and were improperly and carelessly slung by said defendant, his agents, servants, and employés operating said derrick and its appurtenances at the time. Second. That the said derrick was operated in too great haste while lowering the cotton in the hold of the ship. Third. That the derrick and its appliances on which the cotton was hoisted and let down into the hold of the vessel were not in the proper position, and should have been stationed on the forward compartment, instead of the aft compartment. Fourth. That two bales of cotton, as is customary, were hoisted by said derrick and lowered into the hold at one and the same time. That *376 the bight of the sling that took hold of the cotton and lowered it into the hold of the vessel was entirely too long, and the bale of cotton which struck petitioner was loosened and fell out of the sling.
Petitioner alleges amicable demand and failure to pay. In view of the premises, he prays that William J. Kearney be cited to appear and answer this petition, and after due proceedings he be condemned to pay unto petitioner the aforesaid sum of $5,000, with interest, costs, and for general relief.
Defendant answered. He first pleaded the general issue, and further answered: That he admitted that on the 15th of November, 1904, plaintiff was working, storing cotton in. the hold of the steamship Chancellor, lying at the wharf at Chalmette, in the parish of St. Bernard. That cotton was being loaded from the wharf into the hold of said steamship, by being hoisted by means of a hoisting gear or steam winch and lowered by said machinery into the hold of the ship. That the plaintiff was one of a gang of screwmen who belonged to an organization, the members of which defendant and other stevedores were compelled to employ in the loading and storing of cotton in vessels. That the said screwmen work in gangs, and that one of their gang or members is in charge of the winch or hoisting machinery by which the cotton is hoisted from the wharf and lowered into the hold of the vessel. That on the day in question, and at the time the bale of cotton referred to in plaintiff’s petition fell and injured plaintiff, plaintiff and others of the gang of screwmen to which he belonged were storing cotton into the hold of the vessel, which cotton was hoisted from the wharf and lowered into the hold by means of said steam winch or hoisting machine, which was operated by one of the gang of screwmen to which plaintiff belonged, and with whom he was working, and therefore a fellow servant of plaintiff.
That respondent denies that plaintiff was injured as alleged in his said petition, or that the injuries sustained were of the character set forth in said petition; and respondent avers that, if plaintiff was injured, said injury resulted to plaintiff from the negligence, carelessness, and want of skill of plaintiff’s fellow servant who was in charge of and operating the said winch or hoisting machine, in that plaintiff’s fellow servant, who was operating said winch or hoisting machine, was warned not to hoist the cotton then in the sling, one of which bales fell and injured plaintiff, until said cotton be securely fastened in said sling, but despite said warning, plaintiff’s fellow servant carelessly and negligently hoisted said cotton, one of which broke loose and fell upon plaintiff in consequence of the carelessness, recklessness, and negligence in the operation of the said winch or hoisting machine by plaintiff’s fellow servant.
Further answering, respondent denies that the apparatus used in the hoisting of said cotton was of improper construction or was not in the usual or proper position, but, on the contrary, avers that said apparatus was of proper construction and design and in good condition, and was operated in a safe and proper location, and that, even if said apparatus had not been in a safe and proper location, the plaintiff had worked for several days with said apparatus in the place and condition in which it was, and that if the injury to plaintiff resulted from the improper location of said apparatus, which respondent specially denies, plaintiff assumed the risk incidental to the location of said apparatus and the injury that might have resulted to him therefrom.
In view of the premises respondent prays that plaintiff’s suit be dismissed, with costs, and for all general and equitable relief.
Judgment was rendered in favor of the defendant, and the plaintiff appealed.
*377 Opinion.
The plaintiff in this suit was severely injured while engaged as a screwman, loading cotton in the hold of the steamship Chancellor. The injury was caused by the falling into an open hatchway of a bale of cotton which was being loaded into the vessel. He was not in a position to see or know exactly how or through whose instrumentality the bales fell, but he charges that the cotton was loaded into the ship by means of a derrick and appliances connected with the same; that the bale which struck him was one of two bales which were not well fastened and secure in the sling attached to the derrick, and that the parties operating the derrick and its appliances operated the same in too great haste while lowering them into the hold of the ship; that the bight of the sling that took hold of the cotton and lowered it into the hold was entirely too long, and the bale which struck him was loosened and fell out of the sling. He alleges that defendant was the stevedore employed to load the vessel (at the time of the injury received by him), in charge of the gang operating the derrick from which the bale of cotton fell which injured him; that the stevedore, Kearney, his agents, servants, and employes operating the derrick and its appliances, were guilty in so operating them of gross negligence and fault, want of due care, and ordinary skill.
The ease is submitted to us with a claim to liability on the part of the defendant as an employer under circumstances very exceptional in character.
In the brief filed on behalf of the defendant, his counsel say:
“It is evident that the commerce of the port of New Orleans is handled by two associations —the Longshoremen’s Benevolent Association, which handles cotton up to the time that the sling is attached to the hoist, and the Screw-men’s Association, which handles it from that time until it reaches the hold of the ship.
“These two associations control absolutely the commerce of the port, forming together what is known as the ‘Dock and Cotton Council,’ and enforcing the rules of this council by boycott or strike. The Screwmen’s Association refuses to take cotton from anybody but members of the Longshoremen’s Association, and the Longshoremen’s Association refuses to deliver the cotton to anybody but members of the ¿crewmen’s Association.
“The stevedore does not, and is not allowed to, come in contact with the individual. He cannot employ the individual, but must employ an entire gang, which is made up of members of this association among themselves, and to which they designate one of themselves as foreman. These screwmen are supreme aboard ship. They handle the cotton from the moment the sling is attached to the hoist. One of the rights which they demand is that one of the gang must operate the winch. They themselves select the man who is to operate the winch. The stevedore is not allowed any choice in the matter, and on the day of the accident the screwman and the members of the gang in which plaintiff worked, designated ‘Tony,’ one of their gang, to operate the winch.
“Every witness in this case, including the plaintiff himself, has testified that the stevedore is not allowed any choice in the selection of the winchman, and if, on the day in question, the defendant had put the most expert machinist to operate this winch, all of the screwmen would have left the work, and would have declined to return to work until one of their number had been reinstated at the winch.”
Tbe plaintiff and. his fellow workmen were engaged in loading cotton from the wharf into the hold of the ship. The operation consists in hoisting the cotton from the wharf by means of a steam winch and lowering it into the hold, where it is stored. This work is subdivided by the arbitrary regulation of a certain element of labor in the city of New Orleans. The cotton is handled on the wharf and the rope attached to the hoisting gear by a class of men called “Longshoremen.” The hoisting gear is operated and the cotton detached therefrom and stored by a class of men called “Screwmen.” Under the regulations which these labor associations have established, and as conditions imposed by them, the longshoremen will not handle the cotton that is not hoisted and stored by screwmen, and the screwmen will not hoist and store cotton that is not handled by the longshoremen. Whatever, therefore, may be the particular work that these respective *378 laborers may be assigned to, it is evident they are engaged in tbe common work and undertaking of loading cotton from the wharf into the hold of the ship. The man operating the winch was a screwman, and belonged to the same gang as the plaintiff. The hoisting of the cotton by means of the steam winch and lowering it into the hold, where it is detached and placed in position, is a common work or undertaking. It is evidently considered such by the serewmen themselves, for the reasons that in the gangs which they make up to do this work they always include and require the master to employ one of their men to operate the steam winch. On the occasion of this injury the steam winch was operated by one of plaintiff’s fellow gangmen or workers.
The following testimony was given by the defendant on the trial:
“Q. Mr. Kearney, what is your business?
“A. I am stevedore for the Harrison Line steamers.
“Q. -Were you engaged in loading the steamship Chancellor on the day that this accident is said to have occurred?
“A. I was.
“Q. Do you employ members of the Screw-men’s and Longshoremen’s Associations?
“A. Yes, sir.
“Q. Do they fill all positions appertaining to the loading of the ship?
“A. Yes, sir.
“Q. Under your engagement with the Screw-men’s Association do you or not select a winch-man of your own choice?
“A. No, sir; I have nothing to do with it.
“Q. Who must you employ?
“A. I must employ a foreman who is a member of the union, and he selects the men to do the work.
“Q. Can you employ the captains of the hatch?
“A. I can’t employ. It is against'the rules of the Screwmen’s Association to employ any of their organization.”
By the court:
“Q. Mr. Kearney, explain in a few words how you do this. You are employed yourself by the Harrison Line to unload their vessels?
“A. Yes, sir.
“Q. Tell me how you go about it.
“A. I employ a foreman who is a member of the screwmen’s organization, and he selects the men to work aboard the ship. I tell him the amount of gangs that I want and the amount that is to go in each respective hatch, and he puts them to work.
“Q. Now, who on this particular occasion did you employ as foreman?
“A. A man by the name of Powers.
“Q. To what did he belong?
“A. He was a member of the screwmen’s organization.
“Q. You told Powers how many gangs you wanted ?
“A. Yes, sir.
“Q. And who employed the plaintiff, you or Powers ?
“A. The foreman of the ship employed him. I had never seen him until I got down that morning, until the ship started working.”
By defendant’s counsel:
“Q. What would be the result if you put an expert mechanical engineer to handling the winch ?
“A. All work would stop if I employed anybody but what was a member of that organization.
“Q. All work would stop — by whom?
“A. The screwmen’s organization would refuse to go to work — the members of the organization.
“Q. And if the serewmen refused to go to work — struck—could you or could you not load through the longshoremen that ship?
“A. No, sir.
“Q. Would they or would they not turn over stuff to a gang that were not members of the Screwmen’s Association? *
“A. No, sir.”
The evidence establishes that, while the longshoremen’s organization and the screw-men’s organization are distinct and separate associations, they none the less, by some kind of an agreement made between themselves, act in concert as to working or refusing to work. The violation by a stevedore of the rules and regulations of one of the two associations is practically and substantially acted upon as a violation of the rules and regulations of the other.
The men working on shore at the time of the accident in placing the cotton bales into the sling were Mathieu and Adler, two men belonging to the Longshoremen’s Association. The man on the ship engaged at the hoist or “winch” was a member of the Screwmen’s Association name “Tony.” In his pleadings the plaintiff threw the blame of the accident upon all three of these parties; but in his argument, after the evidence was all in, *379 seems to throw it upon the men on shore. In their testimony the two men on shore throw the blame upon the man at the winch. They maintain that, when the two bales which were on the sling at the time of the accident reached the ship they were permitted (intentionally or unintentionally) to rest upon some cotton bales which were upon the ship’s deck, when the man Tony who was at the winch loosened or relaxed the hold of the sling upon them and by doing so caused orie of them to roll out and fall into the hold, where it struck and injured the plaintiff. There is some conflict of evidence as to what occasioned the falling of the bale from the sling.
Under the view we take of the rights and obligations of the parties it is not necessary for us to determine which of the workmen. was responsible for the falling.
When a person contracting for work which' he engaged to do needs a number of workmen to perform the same, the individual workmen empjoyed rely upon the contractor’s having and exercising proper knowledge, skill, and prudence in the selection of the workmen other .than themselves ; that he will see to it that they each have proper knowledge, skill, and prudence. They rely, also, upon his exercising himself (or through some one whom he selects to represent him) due care, knowledge, and prudence in superintending the workmen as they work; that he will see that they perform their work properly. The workmen may, however, elect in any particular case, as between. themselves and the contractor, to relieve the latter from these duties and obligations, and the responsibility resulting from their nonperformance, by selecting agencies of their own choice, to which they look for their own proper protection, and which they substitute for that purpose for the contractor. The responsibility of the contractor rests upon freedom of action in the selection of the workmen and. in his superintendence over them. When the individual workmen, instead of allowing matters to take their usual shape 'and course, make it a condition of their consent to accepting service that he (the contractor) will yield in their favor this right of freedom of action as to selection and superintendence, they absolve him from- responsibility which would otherwise be thrown upon him and look to that of their own selected agencies. When the workmen delegate to a labor organization which they have joined (and to others in privity with their own organization) the right of selection and superintendence, they agree to accept the membership of their fellow workmen in those organizations, and the action of those associations, ipso facto, as a good and sufficient guaranty to them for their individual safety and protection, so far as the contractor is concerned. If they deem membership in organizations as conferring benefits upon them, they cannot accept the benefits and repudiate the resulting legal disadvantages.
For the reasons, assigned herein, it is hereby ordered and decreed that the judgment appealed from be, and -it is hereby, affirmed.