[L. A. No. 2864.   Department One.—June 11, 1912.]

# H. O. WORLEY, Respondent, v. SPRECKELS BROTHERS COMMERCIAL COMPANY, (a Corporation), Appellant, and MANUEL VARGAS, Defendant.

APPEAL—ORDER REFUSING NEW TRIAL—CERTIFICATE OF CLERK TO COR-RECTNESS.—The record on appeal from an order denying a motion for a new trial sufficiently shows that the order was made, when a copy of the minute order to that effect is contained in the transcript, properly certified in his certificate attached thereto by the clerk.

NEGLIGENCE — MASTER AND SERVANT — FELLOW-SERVANTS — SLINGMAN AND WINCHMAN ENGAGED IN UNLOADING VESSEL.—A slingman engaged in the general work of unloading a vessel, whose particular duty it was to receive merchandise hoisted by a steam winch from the hold of the vessel, and as it was lowered on flat cars on the wharf, unhook the hoisting tackle, is a fellow-servant with the operator of the winch, and, under the law as it was at the time of the accident in question, the employer was not liable for an injury to the former due solely to the mere negligence of the latter.

ID.—DEFECTIVE MACHINERY — UNSAFE PLACE TO WORK—PROXIMATE CAUSE OF INJURY.—An employee cannot recover on account of defective machinery or appliances or unsafe place in which to work, unless the same has directly caused or contributed to the injury, in other words, was a proximate cause of the injury.

ID.—INJURY TO SLINGMAN DUE TO INCOMPETENCY OF WINCHMAN.—If such winchman was unfit or incompetent to perform his duties as such, by reason of any cause, and the employer knew or would have known of it if he had exercised ordinary care in the matter of his employment or retention in that capacity, the latter is liable for personal injuries to such slingman of which the unfitness or incompetency of the winchman was the proximate cause.

ID.—IGNORANCE OF WINCHMAN OF LANGUAGE IN WHICH ORDERS WERE GIVEN—EVIDENCE OF INCOMPETENCY.—Where it was the custom to control the operation of such winch by orders given the winchman in the English language, the jury were justified in concluding that one who, by reason of his lack of knowledge of that language, was unable at once to appreciate the meaning of a direction so given him, was not fit or competent for the discharge of the duties of such position. In the present case, the evidence, although conflicting, is held sufficient to support the conclusion that the winchman was so deficient in his knowledge of the English language, and that the accident to the slingman was due to his inability to understand an order given him in connection with the operation of the winch.

ID.—ORDINARY CARE IN SELECTION OF EMPLOYEE.—The term "ordinary care," as used in defining the care an employer is required to use in the selection of his employees, means that degree of care that a man of ordinary prudence would use in view of the nature of the employment and the consequences of the employment of an incompetent person—a degree of care commensurate with the nature and danger of the business and the grade of service for which the servant is intended, and the hazards to which other servants are to be exposed from the employment of a careless or incompetent person.

ID.—ORDINARY CARE QUESTION FOR JURY.—Whether the employer, having knowledge of the winchman's ignorance of the English language, exercised ordinary care in assigning him to his work, was a question upon which reasonable minds might well differ, and therefore one for the jury.

ID.—SPECIAL VERDICT — FINDINGS THAT SEVERAL DIFFERENT THINGS WERE PROXIMATE CAUSE OF INJURY—VERDICT NOT INCONSISTENT.— The fact that the jury by their special verdict found that each of several things, including the incompetency of the winchman, was the "proximate cause" of the injury to the slingman, does not render it and the general verdict so inconsistent as to require that it and the general verdict in favor of the slingman be set aside. Properly construed, the special verdict means that all such things contributed to the injury, and the general verdict will be sustained if one of the matters specially found on is sufficient to support it.

ID.—EVIDENCE OF INCOMPETENCY — PRIOR ACTS OF NEGLIGENCE.—Evidence of individual acts tending to show negligence or incompetency is admissible for the purpose of showing that the employee was in fact unfit or incompetent. Consequently there was no error in allowing evidence that on a prior occasion the winchman, while acting as such for the defendant, had caused damage to property by reason of his manner of handling the winch, and that such matter was known to the defendant.

ID.—IMPEACHMENT OF PARTY'S OWN WITNESS—ADVERSE TESTIMONY— FAILURE TO GIVE EXPECTED TESTIMONY—EVIDENCE NOT PREJUDICIAL. The rule that where a witness called by a party has given damaging testimony against him, the party calling him may show, where he is surprised by the *adverse* testimony given by him, that such witness has previously made statements inconsistent with his testimony given on the trial, has no application where such witness does not testify *adversely* to the party calling him, but merely fails to give certain testimony expected of him. In the present case, the admission of the testimony objected to, although it may not have been justified by the foregoing rule, is held to have been without prejudice to the defendant.

ID.—IMPEACHING TESTIMONY—STATEMENTS MUST BE INCONSISTENT—NATURAL IMPRESSION OR EFFECT OF STATEMENTS IS CRITERION OF INCONSISTENCY.—To justify the admission of a prior statement for the purpose of impeaching a witness, after the proper foundation has been laid, there must be an inconsistency between it and the testimony of the witness, and such inconsistency must appear *prima facie* before the alleged impeaching declaration can be introduced. Such inconsistency is to be determined, not alone by the individual words or phrases used, but by the natural impression or effect of the two statements. The prior statement is then open to explanation as to its meaning by the impeached witness if he has any explanation to make, and its effect may be limited by instruction to the jury solely to the question of the credibility of the witness.

ID.—AMENDED ANSWER FILED WITHOUT PERMISSION—STRIKING FROM FILES.—An amended answer, filed without leave of court after issue has been joined, may be stricken from the files.

ID.—IMPAIRMENT OF EMPLOYER'S RIGHT TO SELECT EMPLOYEES—SELECTION LIMITED TO MEMBERS OF LABOR UNION.—The defendant is not exonerated from liability for an injury to such slingman due to the incompetency of the winchman by the facts that they were both members of the same Longshoremen's Union, members of which were employed by him in the loading and unloading of vessels; that one of the rules of that union, to which both of such employees had subscribed, was that the defendant should not be permitted to employ any person other than members of said union, so long as such members presented themselves for work; that they both presented themselves to defendant for employment, as members of such union, and worked together for one day and a part of another, and that the slingman made no complaint, either to the union or to the defendant, as to the competency of the winchman, but had accepted him as such and worked with him without complaint until the time of the accident. Such facts do not show either that defendant's right to select a competent winchman was in any degree impaired, or that the slingman in any way guaranteed the fitness or competency of the winchman.

ID.—EMPLOYER LIABLE FOR NEGLECT OF AGENT.—An employer is liable for the nonperformance of any obligation which the law imposes upon him, notwithstanding the neglect to perform is that of an agent to whom he has delegated the performance, even though he exercised due care in the selection of such agent.

ID.—INSTRUCTIONS.—Upon a review of the instructions it is held that no prejudicial error was committed in giving those complained of or in refusing to give those requested by the defendant.

APPEAL from a judgment of the Superior Court of San Diego County and from an order refusing a new trial. W. R. Guy, Judge.

The facts are stated in the opinion of the court.

Harry L. Titus, James E. Wadham, and Clark A. Nichols, for Appellant.

Crouch & Crouch, for Respondent.

ANGELLOTTI, J.—This is an action for damages for personal injuries, alleged to have been suffered by reason of the negligence of defendant. Plaintiff had verdict and judgment. Defendant appeals from the judgment and from an order denying its motion for a new trial.

There is no force in the objection made by plaintiff to a consideration of the defendant's bill of exceptions.

Counsel for plaintiff is in error in his statement that the record does not show that an order has been made denying defendant's motion for a new trial. It does contain a copy of the minute order to that effect, properly certified in his certificate attached to the transcript by the clerk. (*Mendocino County* v. *Peters*, 2 Cal. App. 24, 28, [82 Pac. 1122].)

At the time he received the injuries on account of which this action was brought,—namely, on July 20, 1909, plaintiff, who was a longshoreman, was working for defendant as a slingman, in helping unload the steamer "Nevadan" at San Diego. He had been engaged in this particular work only since about 2:30 o'clock of the preceding afternoon. The ship was lying at a wharf, and loads of merchandise were being hoisted from its hold by a steam winch, and lowered to flat cars on the wharf, whence they were trucked into a warehouse a few feet away. The ship was being unloaded from its three hatches, two winch drivers and a slingman being allotted to each hatch. Plaintiff's duty was to receive the loads coming from hatch No. 3 as they were lowered to a flat car, and to there unhook them, and in the performance of this duty it was necessary for him to stand on the car. The winches were operated by steam power, and caused to either go ahead or reverse by the use of a lever after turning a screw which let in the steam. At hatch 3, one Vargas, a longshoreman who had been assigned to this particular duty, was acting as "amidships winch driver," and another man was acting as "burden winch driver." There was evidence

to support a conclusion that plaintiff did not know that Vargas was acting as the amidships winch driver. The load is raised from the ship by the amidships winch and lowered to the flat car by the burden winch. When, so being lowered, it reaches its destination, it may easily be unhooked if the rope has been sufficiently slackened. If this has not been done, it becomes necessary for the amidships winch driver to slacken the rope by moving his winch in the opposite direction from that in which it was moved in hoisting the load from the ship. The winch drivers operated in response to signals, made by the hand or by words, given either directly by a hatch tender on the ship, or by the sling tender on shore, through the hatch tender or directly. The usual directions by words were "come back," "go ahead," and "hold it," and when the load had been lowered by the burden winch and it was desired that the rope should be slackened, "come back on the amidships," a direction to the amidships winch driver to reverse, or "come back." At the time of the accident, the hatch tender had gone below, and it was necessary for plaintiff to give such signals as were required directly to the winch drivers. Loads of coils of wire were being taken out of hatch 3 and lowered to the flat car on which plaintiff was working. A load of such coils was lowered, coming down partially on said car, and plaintiff proceeded to unhook it. Finding that the rope was not slack enough to permit this to be done, standing with his back to the ship and facing the load, he called out "come back on the amidships," and at the same time gave the signal therefor with his hand. Vargas instead of "coming back" went ahead with his winch, thereby pulling the load over against the plaintiff, who was thus caught between the load and some iron beams which had previously been unloaded from the ship and piled along the side of the car nearest the ship. Although he and some of the other men working there continued to call out "come back," Vargas for some little time continued to go ahead, with the result that before he finally stopped, plaintiff was very seriously injured by being crushed between the load and the iron beams. No claim is made in this court that the damages awarded by the jury are excessive in amount.

The evidence clearly shows that plaintiff and Vargas were fellow-servants, and, under the law as it was at the time of

the accident, plaintiff could not hold his employer liable for injuries due solely to the mere negligence of Vargas. The claim of plaintiff is that defendant negligently failed to furnish him a safe place in which to work, and that it failed to use ordinary care in the selection or retention of Vargas as winch driver, whose alleged incompetency, it is claimed, was the proximate cause of the accident.

The jury, in addition to their general verdict, answered certain questions submitted to them on particular issues of fact. They found, in answer to such questions, (a), that the condition on the surface of the car on which plaintiff worked was the proximate cause of his injury; (b), that the failure of Vargas to obey the signal given him by plaintiff was the proximate cause of his injury; (c), that defendant failed to use ordinary care in selecting and retaining Vargas as winch driver and that Vargas was incompetent to act as such; (d), that defendant either had knowledge of such incompetency or should have had it prior to plaintiff's injury; and, (e), that the failure of defendant to use ordinary care in the selection and retention of Vargas was the proximate cause of plaintiff's injury.

The claim in regard to the negligent furnishing of an unsafe place in which to work was based upon the fact that the flat car upon which plaintiff was required to be was loaded on one side with iron beams as already indicated. The only connection of the iron rails on this car with plaintiff's accident is that they served as a bulwark against which he was crushed by the load of wire when Vargas failed to follow the order given him, and directly contrary to such order moved the load in the direction of and against plaintiff. Of course there can be no recovery on account of defective machinery or appliances or unsafe place in which to work, unless the same has directly caused or contributed to the injury, in other words, was a proximate cause of the injury. It may be assumed that under the authorities cited by defendant, the sole proximate cause of the injury in this case was either the negligence or incompetency of Vargas, and that the condition of the car was not the proximate cause of the injury. (See *Luman* v. *Golden etc. Co.*, 140 Cal. 700, 707, [74 Pac. 307]; *Vizelich* v. *Southern Pacific Co.*, 126 Cal. 587, [59 Pac. 129]; *Trewatha* v. *Buchanan etc. Co.*, 96 Cal. 494,

500, [28 Pac. 571, 31 Pac. 561] ; *Kevern* v. *Providence etc.
Co.,* 70 Cal. 392, [11 Pac. 740].)

As we have said, in view of the fellow-servant rule, defend-
ant would not be liable to plaintiff for these injuries, if they
were solely due to the mere negligence of Vargas, a fellow-
servant of plaintiff.  But if Vargas was unfit, or, as it is
generally put, incompetent to perform the duties of an amid-
ships winch driver, by reason of any cause, and defendant
knew of such unfitness or incompetency or would have known
it if it had exercised ordinary care in the matter of his em-
ployment or retention in that capacity, it being one of the
obligations of an employer to use such care with a view to
the safety of all his employees, and if such unfitness or in-
competency upon the part of Vargas was the proximate cause
of the injury to plaintiff, then admittedly defendant was
liable to plaintiff for the damages caused by such injury.
(See *Still* v. *San Francisco etc. Ry. Co.,* 154 Cal. 559, 563,
[129 Am. St. Rep. 177, 20 L. R. A. (N. S.) 322, 98 Pac.
672].)   The special verdict of the jury found all these facts
in favor of plaintiff, and the conclusions there expressed fully
support the general verdict.   The question is presented
whether there was enough in the evidence from which the jury
might find the existence of these facts essential to the liability
of defendant.   It should be unnecessary to suggest that these
findings are conclusive upon us if there be substantial evidence
in support thereof, no matter how strongly such evidence may
be opposed to other evidence given on the trial.

We are of the opinion that there was enough in the evi-
dence to legally sustain the conclusion of the jury to the effect
that Vargas was, in fact, unfit or incompetent to act as amid-
ships winch driver.

Taking into consideration the duties of one in such a posi-
tion, the dangers reasonably to be apprehended from there
having one who is not able to at once understand and fully
appreciate the nature of such orders as may be given him in
the matter of running such a winch, and the fact that it was
the custom to give such orders either by word of mouth or
by motion of the hand as the party giving the same might at
the moment select, it cannot be held that it may not reason-
ably be concluded as matter of fact that one who, by reason
of his lack of knowledge of the English language at a place

where that language is the one ordinarily used by the work-men, is not able to at once appreciate the meaning of a direction given to him in that language, is not fit or competent for the discharge of the duties of such a position. Failure to comply promptly with an order in regard to the moving of the winch might very reasonably be anticipated to cause great personal injury to those engaged in the work of loading or unloading a vessel, as well as damage to property, and the ability to at once understand and appreciate the full meaning of the words used to convey such orders would seem to be a primary requisite for the position in question. The case of *Date* v. *New York etc. Co.*, 114 App. Div. 789, [100 N. Y. Supp. 171], cited by appellant, is not in point. There the employees who did not understand the English language were engaged in the simple work of pushing a car, and pushed it against a ladder on which the plaintiff was standing, thereby throwing him to the ground. The court said that in the employment of men to do such ''simple work as pushing a car,'' it did not see how it could occur to any one that the fact that they could not understand the English language would make it dangerous to others for them to push a car along a track and that ''the defendant could not have antici-pated such an accident from such a cause, and that is the test of its negligence or breach of duty in putting them at such work.'' A very different situation is presented in the case of such an employee as is here involved.

Consideration of the evidence has satisfied us that there is evidence enough to sufficiently support a conclusion that Var-gas did not measure up to the requirements in this respect. It is true that there is evidence opposed to this theory, but we are bound in view of the verdict to take the evidence most favorable to plaintiff. And while defendant relies very strongly on evidence to the effect that Vargas had worked in this particular capacity on some five or six ships for three or four days on each ship, without complaint or accident, there was positive evidence to the effect that when on the day of the accident he was directed by the captain in charge to take this place, he remonstrated, and said in Spanish (a lan-guage understood by the captain), substantially that he did not understand the winch much, and that he (the captain) kicked against him too much every time he drove a winch,

and that the captain simply ordered him to take that place or go home.

There was also sufficient evidence to support a conclusion that the accident was due to the inability or incompetency of Vargas in this respect—to his failure to at once understand and appreciate the order given him to "come back on the amidships," by reason of his insufficient acquaintance with the English language and his consequent lack of comprehension of the meaning of the words used. His very meager knowledge of the English language was quite clearly shown. While, when orders were given by word of mouth instead of by the mere motion of the hand, it appears that the orders "come back," "go ahead," and "hold it" were quite common, the claim of respondent that the order to "come back on the amidships" is a somewhat unusual one because the situation seldom requires it, does not appear to be unreasonable in the light of the record. There is nothing to show that Vargas had ever been called upon to respond to this particular order, or that he knew exactly what the words meant. His conduct, when the order was given to him, goes far, under all the circumstances, to show that he did not understand its meaning. While it may be, as claimed by defendant, that he did understand, and simply forgot or became confused and thus was impelled to turn the lever the wrong way, we are not warranted in holding that the jury could not reasonably infer that his action was due to a misunderstanding of the order, caused by his ignorance of the English language. The fact that plaintiff also gave the proper signal with his hand at the time he called out his direction does not compel a contrary conclusion. Vargas may not have seen the signal, even if he was in a position where he could have done so, as to which the record leaves us in doubt.

In view of what has already been said, we cannot doubt that the jury were authorized to conclude that defendant failed to use ordinary care in the matter of the employment of Vargas in the capacity of amidships winch driver. As was said in *Still* v. *San Francisco etc. Co.,* 154 Cal. 559, 567, [129 Am. St. Rep. 177, 20 L. R. A. (N. S.) 322, 98 Pac. 672], "under all the authorities the term 'ordinary care' as used in this connection means that degree of care that a man of ordinary prudence would use in view of the nature of the employment

and the consequences of the employment of an incompetent person—a degree of care commensurate with the nature and danger of the business and the grade of service for which the servant is intended, and the hazards to which other servants are to be exposed from the employment of a careless or incompetent person.'' The evidence was clearly sufficient to support a conclusion that those who employed and assigned Vargas to the place in question had full knowledge of his ignorance of the English language. Whether they exercised ordinary care in assigning him to this work, in view of the nature of the employment and the consequences of the employment of one not sufficiently acquainted with the English language to at once fully appreciate and understand all orders that might be given to him in that language, was a question upon which reasonable minds might well differ, and therefore one for the jury.

The fact that the jury found by the special verdict that each of several things was ''the proximate cause'' of plaintiff's injuries, viz., the condition of the surface of the flat car, the failure of Vargas to obey the signal, the incompetency of Vargas, and the lack of ordinary care on the part of defendant in the selection of Vargas, does not render such verdict so inconsistent as to require that it and the general verdict in favor of plaintiff be set aside. The meaning of the answers to the questions submitted to the jury is obvious. They simply concluded that all these things contributed to the injury. If the conclusion that the condition on the surface of the flat car was a proximate cause of the injury be not sustained by the evidence, it still remains that the other findings are ample to sustain the general verdict. We are utterly at a loss to understand defendant's claim that plaintiff was not entitled to recover unless he proved ''both an unsafe place to work and negligence in employing an incompetent servant.'' Negligence in either respect, proximately causing the injury, is a sufficient basis for the recovery.

There was no error in allowing proof of a prior act of Vargas, while acting as winch driver for defendant, tending to show negligence or incompetency, which act was known to defendant's agents in charge. This evidence, which was simply that Vargas on a prior occasion, by his manner of handling the winch, had ''smashed up some furniture or boxes,''

was not very important, and it is clear that standing alone it would not have been sufficient basis for a conclusion that Vargas was in fact unfit or incompetent. (*Holland* v. *Southern Pacific Co.*, 100 Cal. 240, [34 Pac. 666].) But it was evidence tending in some degree to show unfitness or incompetency, which might properly be taken into consideration in connection with other evidence on that question. We understand it to be the general rule that evidence of individual acts tending to show negligence or incompetency is admissible for the purpose of showing that the employee was in fact unfit or incompetent. This was declared to be the rule in *Gier* v. *Los Angeles etc. Ry. Co.*, 108 Cal. 129, 134, [41 Pac. 22]. If, as claimed, the statement there was *obiter dictum*, we nevertheless consider it correct, and the California cases cited decide nothing to the contrary.

One Joe Myers, who was a foreman and hatch tender at the time of the accident, was called as a witness by plaintiff. He testified on his direct examination that Vargas was a Mexican, and said "I do not know whether he could speak the English language. He could understand a little, understand enough to do his work. I could not say whether he was a competent winch driver." Plaintiff's attorney was then permitted to elicit from the witness testimony to the effect that he, the witness, had told him, the attorney, that he had to keep after Vargas all the time "hollering at him about going ahead too fast or too slow," and that he did not remember using the words "There was always something wrong." He further testified that he had to "keep after" all winch drivers about going too fast or too slow. No other evidence was offered by plaintiff to show that Myers had ever said anything to the effect that there was always something wrong with Vargas. The theory upon which plaintiff was permitted to elicit this evidence was that where a witness called by a party has given *damaging* testimony against him, the party calling him may show, where he is surprised by the *adverse* testimony given by his own witness, that such witness has previously made statements inconsistent with his testimony given on the trial. It is thoroughly settled, however, that the rule invoked in such cases has no application where such witness does not testify *adversely* to the party calling him, but merely fails to give certain testimony expected of him.

(See *People* v. *Creeks,* 141 Cal. 529, [75 Pac. 101], and cases
there cited. *Bollinger* v. *Bollinger,* 154 Cal. 695, 705, [99
Pac. 196] and cases there cited.)   But if we assume that the
situation was not such as to make the rule relied on by plain-
tiff applicable, we are of the opinion that it should be held
that defendant was not prejudiced by anything testified to by
Myers in this regard.   It was not shown thereby that Myers
had ever said anything to the effect that there was always
something wrong.   He flatly said that he did not remember
saying anything of that kind, and no testimony was subse-
quently introduced by plaintiff to show that he ever did make
any such statement.   The other statement, viz., about "going
ahead too fast or too slow" was of no importance in view of
the circumstances of the accident, and it may fairly be said
thereof that evidence concerning it was not prejudicial.

Patrick Walsh was called as a witness for defendant, and
testified on direct examination that he had worked in the
capacity of foreman of the hatch or hatch tender on several
occasions, and that Vargas had worked under him.   He said:
"So far as I know, when Vargas was working under me he
never had any difficulty in understanding me when I gave him
orders; I always spoke to him in English and cannot speak
anything else.   During the time, about two years before July
20, 1909, I was nearly always present when a ship was being
unloaded in some capacity; I never heard any complaint
against Vargas as a winchman."   On cross-examination, he
denied that on a previous occasion, the time and place being
specified, he had said to plaintiff: "I don't want to be drawn
into this case, but I would be G—— d—— if I would have a
fellow like that drive a winch for me," and also: "I wouldn't
hire a man like Vargas unless I had to."   Plaintiff was al-
lowed, in rebuttal, to testify that Walsh made such state-
ments to him at such time and place.   The action of the trial
court in allowing this testimony is claimed to have constituted
prejudicial error.

If such prior statements may properly be held to be *incon-
sistent* with the testimony given by Walsh on his direct exam-
ination, evidence of such statements (he denying them and
the proper foundation having been laid) was admissible, of
course, for the purpose of impeaching the witness, although
such evidence was not admissible for any other purpose.   (See

*Keyes* v. *Geary St. etc. R. R. Co.*, 152 Cal. 437, [93 Pac. 88].)
But to justify the admission of a prior statement under this
rule, it is universally recognized that there must be an incon-
sistency between it and the testimony, and such inconsistency
must appear *prima facie* before the alleged impeaching decla-
ration can be introduced. But obviously, as is said in section
1040 of Wigmore on Evidence (vol. 2), "such is the possible
variety of statement that it is often difficult to determine
whether this inconsistency exists." It is further said in the
same section: "As a general principle, it is to be understood
that this inconsistency is to be determined, not by individual
words or phrases alone, but by the whole *impression or effect*
of what has been said or done. On a comparison of the two
utterances, are they in effect inconsistent? Do the two ex-
pressions appear to have been produced by inconsistent be-
liefs?" Gauged by this test, which appears to us to be
entirely fair, we think the evidence was admissible. The
whole impression and effect of the testimony given by Walsh
on his direct examination was that, in his opinion, Vargas
had a sufficient understanding of the English language to
properly enable him to perform the duties of a winchman,
and that he was in every way competent to perform those
duties. The natural impression or effect of the language used
in the alleged prior statements was that in his opinion, Vargas
was not fit or competent for that place. We believe the al-
leged prior statements were of such a nature that plaintiff
was entitled to have them go to the jury on the question of
the credibility of the witness Walsh. We are aware that
there are some expressions in the opinion in *People* v. *Collum,*
122 Cal. 186, [54 Pac. 589], that may appear inconsistent
with our ruling on this question. In so far as that opinion
may be construed as holding that notwithstanding the natural
effect and impression of inconsistency, nevertheless if both
statements (the one on the trial and the prior statement)
may be literally true on some conceivable hypothesis, the prior
statement may not be shown, we think it goes too far and
does not state the correct rule. It is claimed here that possi-
bly Walsh had a personal dislike for Vargas because he was
a Mexican or for some other reason entirely consistent with
his competency, and that it may have been on this account
alone that he would not have him run a winch for him unless

he had to. If such were the case, it is said, the two statements would be absolutely consistent. But we think it is sufficient to warrant the proof of the prior statement that the natural effect and impression of the two statements is that they are inconsistent. The prior statement is open to explanation as to its meaning by the impeached witness if he has any explanation to make, and its effect may be limited by instruction to the jury solely to the question of the credibility of the witness.

Defendant having filed its answer on January 10, 1910, on February 10, 1910, without leave of court and without the consent of plaintiff, filed an amended answer, setting up an additional defense to those contained in the original answer. Plaintiff on February 24, 1910, moved, on notice, to strike the same from the files on the ground that it had been filed after issue joined, without leave of court or consent of plaintiff. The motion was granted on March 2, 1910, the day named in the notice of motion, which was the day of the commencement of the trial. No claim was apparently made in the lower court or is made here that the motion was not well grounded. The amended answer having been filed without leave of court, there was no error in ordering it stricken from the files. It does not appear from the bill of exceptions, which purports to contain the proceedings in relation to the matter of said amended answer, that any application for leave to file an amended answer was made to the court at any time. It is doubtful whether the purported minute entry of February 28, 1910, found in the judgment-roll, which simply shows such an application "for leave to file an amendment to the answer," and the denial, an exception to the ruling and leave to prepare and serve a bill of exceptions within thirty days, in so far as it shows such application, is any part of the judgment-roll or of the record. But if it can be considered on this appeal, there is nothing therein to show what was the nature of the amendment then desired to be presented. So that the question whether the court committed any error in refusing to allow an amended answer to be filed is really not presented on this appeal. But assuming that the proposed new matter was the same as the new matter incorporated in the amended answer that was stricken out, we are satisfied that the proposed new defense did not state facts sufficient to

constitute a defense to plaintiff's action. It was sought thereby to bring the case within the doctrine declared in *Callan* v. *Bull,* 113 Cal. 593, 598, [45 Pac. 1017], as follows: "The master's liability for the negligence of his servant rests upon his right to select the servant and to control his work, but, when this selection and control rests in another, he is freed from such liability. The same principles govern the liability of a contractor for an injury resulting from the use of defective materials in his work. He can be held liable only when he has the right of selecting the materials." Substantially it was alleged in the proposed new defense that plaintiff and Vargas were both members of the Longshoremen's Union, members of which defendant employed in the loading and unloading of vessels; that one of the rules of said union, to which both plaintiff and Vargas had subscribed, was that defendant should not be permitted to employ any person other than members of said union, so long as members of said union presented themselves for work; that plaintiff and Vargas both presented themselves to defendant for employment, on July 19, 1909, as longshoremen and members of said union; that plaintiff and Vargas worked together on July 19th and a part of July 20th, and plaintiff made no complaint to the union, to any of its members, or to defendant, as to the competency of Vargas, but accepted him as winchman and worked with him without complaint until the time of the accident. There was nothing in all this to show either that defendant's right to select a competent winchman was in any degree impaired, or that plaintiff in any way guaranteed the fitness or competency of Vargas as a winchman. The difference between these allegations and the facts of the case of *Farmer* v. *Kearney,* 115 La. 722, [3 L. R. A. (N. S.) 1105, 39 South. 967], as the same are stated in appellant's brief, is obvious from a mere reading of such statement.

We find no prejudicial error in such instructions given to the jury as are complained of. The instruction to the effect that as to any obligation which the law imposes upon the employer, all of which had been specified in prior instructions, the employer is liable, notwithstanding the neglect to perform it is that of an agent to whom he has delegated the performance, even though the employer exercised due care in the selection of such agent, correctly stated the law, and was per-

tinent to the facts of the case.   The instruction in regard to the character of risks assumed by one accepting employment correctly stated the law.   It also may be said of it that it cannot be held to have been prejudicial, in view of the special findings of the jury to the effect that Vargas was incompetent, that his incompetency was a proximate cause of the accident, and that defendant neglected to use ordinary care in employing and retaining him in the position of winchman. Even if we assume that it may well have been omitted, we cannot see that the instruction relating to the duty of an employer in cases where the service in which an employee is employed is such as to endanger the lives and persons of coemployees, if the employee is not competent, which is correct as an abstract proposition of law, could possibly have prejudiced defendant, especially in view of the other instructions given.   The instructions as a whole were very fair and complete, fully presenting the propositions of law applicable in a manner free from criticism.

As to the refusal of the court to give certain instructions requested by defendant: The requested instruction to the effect that if the proximate cause of the injury was the furnishing by defendant of an unsafe place in which to work, then plaintiff was guilty of contributory negligence, and the jury must find for the defendant, was properly refused. Whatever other objections there may be thereto, it was incorrect in view of the fact that the evidence was not such as to make the question of contributory negligence on the part of plaintiff one of law for the court.   In view of the findings of the jury, the failure of the court to give a requested instruction declaring in terms that plaintiff and Vargas were fellow-servants cannot be held prejudicial.   The long proposed instruction in relation to the duty of the jury in regard to the question of the competency of Vargas at the time of the accident and the question whether the defendant exercised ordinary care in the matter of his employment as winch driver at the time of the accident was fairly covered, we think, in so far as it was correct, by other instructions.

There is no other point made that requires notice here.

The judgment and order denying a new trial are affirmed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.