[Civ. No. 1299.    Third Appellate District.—November 30, 1914.]

## EMERICO CAMOZZI, Respondent, v. COLUSA SANDSTONE COMPANY (a Corporation), Appellant.

NEGLIGENCE—PERSONAL INJURIES—PLEADING—SUFFICIENCY OF COMPLAINT.—In an action for damages for personal injuries alleged to have resulted from the negligence of the defendant, where the original complaint in one count clearly alleged sufficient facts to state a cause of action on each of the three alleged acts of negligence of the defendant, notwithstanding that the several causes of action were not separately stated, the pleading was not, as to any of the causes of action so stated, obnoxious to a general demurrer or to a special demurrer for uncertainty.

ID.—DIFFERENT ACTS OF NEGLIGENCE—RIGHT TO RELY UPON ANY OR ALL.—In such a case the plaintiff had the right to rely upon any one of the alleged acts of negligence as the proximate cause of his injury or upon all of said acts as operating together or concurrently in so causing the damage.

ID.—DIFFERENT CAUSES OF ACTION—FAILURE TO SEPARATELY STATE—WAIVER OF OBJECTION.—If the original complaint in such a case was faulty in form, because the several causes of action were not therein separately stated, the defendant, if it desired a reform of the pleading in that regard, should have specially demurred to it on that ground; and having failed so to do the court was authorized to disregard that fault in the pleading.

ID.—ORIGINAL COMPLAINT STATING DIFFERENT CAUSES IN ONE COUNT—AMENDED COMPLAINT STATING SEPARATE CAUSES—CAUSE OF ACTION NOT CHANGED.—In such a case, where the original complaint alleged in one count three different forms of negligence, that is, negligence in the operation of the machine which caused the injury, the employment of an incompetent person to operate the machine, and that plaintiff was inexperienced and uninstructed in the duties and risks of his work, the amended complaint did not introduce either a new cause of action or any different issues, where it separately stated two

of the causes of action, substantially in the same language, that is, the one based upon general negligence and the other upon the alleged incompetency of the employee of the defendant to operate the machine.

ID.—NEGLIGENT OPERATION OF MACHINE—INCOMPETENT OPERATOR—SUFFICIENCY OF EVIDENCE TO SUSTAIN VERDICT—LACK OF CONTRIBUTORY NEGLIGENCE.—In this action for damages for personal injuries alleged to have resulted from defendant's negligence, it is held that the evidence was sufficient to sustain the verdict of the jury in favor of the plaintiff finding that the machine causing the injuries was negligently operated by defendant's employee, and that the latter was incompetent to operate the machine, and that plaintiff was not guilty of contributory negligence.

ID.—INCOMPETENT EMPLOYEE—INVESTIGATION OF QUALIFICATIONS BY EMPLOYER—PRESUMPTION—REBUTTAL OF BY CHARACTER OF INCOMPETENCY—QUESTION FOR JURY.—While the presumption is that an employer has done his duty in investigating the qualifications of an employee to operate a machine which he has been employed to operate, the incompetency of the employee at the time of his employment may be of such a character that the evidence showing it will be legally sufficient to rebut the presumption that the employer used the requisite care in his selection, and make the question one for the jury. This is on the theory that the incompetency was of such a nature that a reasonable investigation would have disclosed it, and that, therefore, the employer either knew of it or omitted to make such an investigation.

ID.—INSTRUCTIONS—NO ERROR IN.—It is held in this action for damages for personal injuries that there was no error in the instructions given by the court.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

C. H. Wilson, for Appellant.

James H. Boyer, for Respondent.

HART, J.—The plaintiff brought this action to recover damages for personal injuries sustained by him, so it is alleged, through the negligence of the defendant.

The trial was by jury, who awarded the plaintiff the sum of $4525.00, the court entering a judgment accordingly.

The defendant brings the case here on appeal from said judgment and the order denying its motion for a new trial.

The first assignment of error presented for consideration is that the plaintiff, in amending his complaint under leave to do so granted by the court, set up a new cause of action, which was barred by the statute of limitations.

The original complaint was in one count and alleged that the accident by which the plaintiff received the injury for which he seeks by this action to recover reparation by way of damages was proximately caused by the defendant by three different forms of negligence, viz.: 1. The negligent and careless operation of the machine by which the injury was inflicted; 2. By the employment of an incompetent and inexperienced person to operate the machine and who was operating it at the time the accident occurred; 3. That the plaintiff was inexperienced in the duties in connection with said machine which he was required to perform and which he was engaged in performing when the accident resulting in his injury occurred, that he was, therefore, unfamiliar with the risks and dangers incident to the discharge of said duties and that he was not instructed or warned of such risks and dangers by the defendant.

The defendant demurred to said complaint on general and special grounds, the special ground being that the complaint was, in certain particulars pointed out therein, uncertain.

The court overruled the demurrer, and when the cause was called for trial and after the impanelment of the jury, counsel for the defendant moved the court for an order requiring the plaintiff to elect upon which of the several causes of action so alleged in the complaint he intended to rely for a recovery. The court denied this motion. After some other proceedings and discussion bearing upon the averments of the complaint, and after the court had ordered stricken from the complaint the third cause of action stated therein, based upon the inexperience of the plaintiff in working on or about the machinery which was responsible for the accident, etc., the trial was proceeded with. After the plaintiff had rested his case, he having presented testimony in support of the allegations of the complaint, counsel for the defendant moved for a nonsuit on the ground, generally stating it, that the evidence wholly failed to support the averments of the complaint in any essential particular. The court denied the motion. Thereafter the

court granted a motion by counsel for the defendant to discharge the jury and for a trial *de novo,* and at the same time granted, over objection by the defendant, the plaintiff permission to amend the complaint. In due time the amended complaint was filed and served on the defendant.

We are not prepared to assent to the proposition that each of the several alleged acts of negligence charged in the original complaint against the defendant constitutes a separate and distinct *cause of action.* This point is not here discussed, however, and as it is unnecessary to consider it here, we shall assume, for the purposes of this case, that they are different causes of action and, according to the rules of good pleading, should have been separately stated.

The original complaint in one count clearly alleged sufficient facts to state a cause of action on each of the alleged acts of negligence of the defendant, and, notwithstanding that said several causes of action were not separately stated, the pleading was not, as to any of the causes of action so stated, obnoxious to the objection raised against it by the general demurrer. (*Estate of Ricks,* 160 Cal. 467, 473, [117 Pac. 539].) Nor was the original complaint amenable to the objection that it was uncertain, the sole special ground of the demurrer. The allegations of the complaint clearly and distinctly disclosed three separate causes of action or acts of negligence. No uncertainty could arise from the complaint in that regard. And the plaintiff had the right to rely upon any one of the alleged acts of negligence as the proximate cause of his injury, or upon all said acts as operating together or concurrently in so causing the damage. "It can make no difference which of those acts caused the injuries, or whether both, operating together, caused them. The result is the same, so far as fixing liability upon the defendant is concerned." (*O'Connell* v. *United Railroads,* 19 Cal. App. 36, 47, 48, [124 Pac. 1022, 1027]; *Worley* v. *Spreckels Bros. Com. Co.,* 163 Cal. 60, 69, [124 Pac. 697].) And, obviously, evidence was admissible to prove either of the several pleaded acts of negligence as the proximate cause of the injury or all as concurring directly to bring about the disastrous result of the accident.

If the original complaint was faulty in form, because the several causes of action were not therein separately stated, the defendant, if it desired a reform of the pleading in that regard, should have specially demurred to it on that ground.

Having failed to do so, the court was authorized to disregard that fault in the pleading. (Code Civ. Proc., sec. 431.)

The amended complaint, however, is not susceptible to the construction given it by the defendant. It sets up and separately states two causes of action, so to speak—the one based upon general negligence and the other upon the alleged incompetency of Minchin, an employee of the defendant, to operate the electric crane, the manipulation of which by him, it is alleged, caused the accident whereby the plaintiff was injured. In substantially the same language both said causes of action were set out in the original complaint. Whatever difference exists between the averments of the two pleadings, if any, in stating the two causes of action referred to, so far as the language thereof is concerned, is merely verbal and not substantial, and the only distinction between them, so far as the form of stating said two causes of action is concerned, is, as stated, that, in the amended complaint, unlike the original, said causes are separately set forth. In other words, the plaintiff, by his amended complaint, introduced into the case neither a new cause of action nor any issues different from those tendered by his original pleading.

The next assignment is the asserted insufficiency of the evidence to sustain the verdict.

The misadventure whereby the plaintiff received injuries which resulted in the severing of his left arm between the wrist and elbow occurred on the fourteenth day of September, 1909, at the stone yards of the defendant, in the city of San Francisco. The plaintiff, at the time of the accident, was about twenty years of age, and was then, and had been for a period of three months prior thereto, in the employment of the defendant as a common laborer in and about its stone yards. The remaining general facts, concerning which there is no dispute, may be stated as they are detailed in the brief of counsel for the plaintiff, as follows:

"In said yards, and sixteen feet above the ground, were two electric cranes, used for the purpose of transporting heavy blocks of stone over the heads of the workmen, from one end of the yard to the other. Each crane was incased in a house or cab, resting on two parallel beams, supporting iron rails, along which the cab and crane were propelled by electric power. This cab, crane, and these parallel beams, with their equipment, were called 'the traveler.' To each end of these

parallel beams wheels were attached, which ran along iron rails adjusted to the top of other beams running at a right angle to the cross-beams upon which the crane and cab rested. The operator of the crane occupied a position in the cab, and could simultaneously cause the crane to operate along the cross-beams upon which it rested and the traveler to run up and down the yard. This crane and traveler were manipulated by means of three levers, a brake, and a controller bar, and contained besides a motor, friction clutch, and an arrester, drop-chain, sheaves, and other complex machinery, the whole weighing about forty tons.''

It appears that Minchin, heretofore mentioned, an employee of the defendant, was placed in charge of the smaller of the two cranes on the day of the accident. He attempted to operate it and, encountering difficulty in causing the cranes to move over the tracks, he asked the foreman of the yards to send some one up the ladder to oil the tracks over which the crane ran. ''The foreman,'' proceeds the brief of counsel, ''directed the plaintiff and another laborer, Wilhoff, to perform this task. They ascended the ladder, used for that purpose, to the roof of the pump-house, shown on the diagram, and in the presence and under the direction of Minchin oiled and wiped the tracks on the cross-beams. When plaintiff was in the act of descending and had one foot on the top rung of the ladder, and was steadying himself with one hand, while holding cotton waste in the other, Minchin, suddenly and without warning, started the traveler in motion, and ran one of the wheels thereof over the left arm of plaintiff, crushing it to ribbons and forcing him off the ladder, and holding him by the torn ligaments of his arm, suspended in the air, three feet from the ladder and sixteen feet above the broken boulders below.''

One of the claims made by the defendant, and which is pleaded in its answer, is that the plaintiff's injuries were directly received by him through his own inexcusable carelessness, or, to put it more concisely and in strictly legal nomenclature, the defense of contributory negligence is set up in the answer.

The plaintiff testified that, when he reached the top of the pump-house, against which the ladder by which he ascended was leaning, Minchin directed him and Wilhoff to oil the tracks over which the cab and crane were propelled. ''I took the left track on which rested the crane house,'' said the plaintiff,

"and oiled the entire track, working easterly on the north track. When I began working, the crane house rested on cross tracks at the easterly end and it was moved to the middle portion of the cross tracks while I was working on the north cross track. Then some one called for the oil can which Wilhoff had. He was working with me on the south track and had the oil can, so he took the oil can down and I finished his work of oiling and wiping the rails with waste. In the mean time Minchin came across from the other crane—he was in the other crane and he came across there, and he crossed in front of me; and he says, 'as soon as you get done the oiling here is some dry waste, start to clean it at the top.' I started off on the other end again and started to do the cleaning. After Minchin said that to me he went right inside the crane house. . . . When I started to oil, the crane house was nearly all on the other end—the eastern end—the furtherest away from where I came up the ladder. When I finished oiling, the crane house had been shoved over about the middle, in the middle of the place. . . . I finished Wilhoff's work for him on the south rail, and so when I was through I went to the other one and finished. Minchin said to me: 'As soon as you get through, hurry up; we have got lots of work to be doing to-day.' I started down on the slanting ladder. I had some waste in my hand. I got my left hand on the rail. The waste was in my right hand. In fact, I had hold of the rail with both hands, the waste being held all the time in the right hand. I had one foot, the left, already on the first ladder rung. I was looking below and was placing the right foot on the ladder below me. My hand caught in the meantime. Then I left go the right one and I jumped and got hold of the beam. I got hold of the beam and was intending to pull it out, trying to pull it out as hard as I can. The crane was on my hand. Up to and prior to the time this accident happened, the crane had not been in motion for about twenty minutes. I mean it was twenty minutes since the traveler was in motion. Altogether I was up there about fifteen minutes and while I was up there the traveler had been still and quiet. When I got caught, the traveler dragged me three feet off the ladder. I was suspended there. My arm was like a piece of rag. I do not know how the traveler came to get on my arm." When the traveler struck the plaintiff's arm he uttered a loud yell and the machine was thereupon stopped. The plaintiff further testi-

fied that he had seen Minchin operate the crane on but one other occasion previously to the time of the accident.

The witness, Wilhoff, corroborated the plaintiff as to the occurences prior to the time when he descended the ladder for the purpose of returning the oil-pot to the workmen on the ground. He testified that, in order to go down the ladder from the tracks over which the traveler passed, it was necessary to "kneel down on the beam" and "take hold of the big rail to catch the ladder. I think the top round was about two feet below the shed roof." He said that, during the two or three years that he was employed at the defendant's yards, he personally knew of only one other occasion than that on which the accident to plaintiff occurred when Minchin had operated the crane.

Grover C. Braddock was the engineer of the defendant when the accident occurred. He testified that at that time he was operating the large crane and in the cab thereof and about thirty feet distant from the spot where the plaintiff was injured. "I happened to look out," he said, and saw Camozzi caught. I could see Minchin in his cab at the levers at that time." The witness hallooed at Minchin to draw his attention to the situation of the plaintiff, and told him to back up the machine. Minchin was standing and looking out of the window on the north side of the cab, and did nothing toward removing the machine from the arm of the plaintiff. "I jumped out of my cab," continued the witness, "walked along the travelers and rail beam from my cab to Minchin's. . . . I took hold of the crane. By that time I hallooed for help. Several boys came up the ladder and by that time they got hold of Camozzi and they hallooed to move the crane and I took hold of it and moved it."

Frank Donald, who had worked for the defendant in its stone yards as a laborer and sort of messenger for about a year prior to the date of the accident, testified that during all the time he was so connected with the defendant Minchin was acting as timekeeper for the corporation. He stated, however, that he had seen Minchin operate the crane that injured the plaintiff on three or four different occasions within the year during which he (witness) worked for the defendant; that he had also seen Minchin doing some repair work on said crane "once or twice before the accident."

26 Cal. App.—6

Upon the close of the case for the plaintiff, the jury, under an order of the court, viewed the premises where the accident occurred and inspected and examined the machine by which the plaintiff was injured.

Minchin, testifying for the defendant, said that his duties as employee of the defendant were those of a "bookkeeper, engineer, general repair man and mechanic of all kinds." He stated that the small crane (the one which produced the plaintiff's injury) was not operated "steadily, but intermittently, as it was used only to load cars." He testified that he had operated said crane "altogether over a period of about eight months next preceding the accident. Being run intermittently," he continued, "I probably ran the small crane, altogether, two weeks steady time." On being cross-examined, however, Minchin testified as follows: "I worked for defendants about three years and while there was, in part capacity, their bookkeeper. Prior to my employment with defendant, I was assistant general manager of the Madera Sugar Pine Company for ten months. Prior to that I was station agent and night telegraph operator for the Southern Pacific Company at Madera continuously for eleven years. Prior to that I was a student in the Polytechnic High School in San Francisco. I never worked for any person, firm or corporation as a machinist or electrician at any time. I have done no other work since I left school than that which I have just detailed. The officers of the defendant knew of my past occupations and experience. The president, secretary and vice president knew of my past occupations and experience."

Minchin further testified, on cross-examination, that he could see the plaintiff from his position in the cab. "Q. Did you look to see Camozzi? A. No, sir. Q. Made no attempt to look? A. No, sir. . . . The last I saw of Camozzi before the accident was as he stood, just about over the pump-house, on the main axle beam." Again, on re-direct examination, the witness testified that he did not, after he went into the cab house, look to see if Camozzi "was on the crane or any part of the appliance. I did not consider it necessary," he proceeded, "to say anything more to Camozzi after telling him that I was through with him and that he could go down. I went into the cab knowing that it was necessary that we get immediate action. The work was piling up all the time. *I considered that he had ample time to get out of the way.* If I had thought for

a minute that there was a shortage of time for him to get down, I presume I would have made some effort to look for him.''

We have in the above statement given enough of the evidence adduced at the trial to show that the jury, having found it to be entitled to belief, were justified in finding therefrom, not only that the crane was, at the time the plaintiff sustained the injuries complained of, negligently operated by Minchin, but that the latter was incompetent to operate the machine and that his want of experience and knowledge in that line of duty was, or, by the exercise of ordinary diligence, could have been, known to the defendant when it assigned him to that employment.

From Minchin's own testimony it is clear that he had had very limited experience in the general handling of machinery and an equally limited experience in the operation of the machine which produced the injuries received by the plaintiff. His regular duty was not to operate the crane. At intervals he performed that duty and he figured that, by computing those intervals of time together, he had operated it for a period of perhaps two weeks in about eight months. When the machine struck the plaintiff, Minchin either became confused or was ignorant of the course he should adopt in that contingency, and it was necessary for Braddock, the regular operator of the larger crane, to go to Minchin's assistance, and he was required to take hold of the levers and move the machine from the arm of the plaintiff. Minchin appeared to be helpless and unable to control the situation. In short, Minchin's conduct from the very beginning—first, in starting the crane without taking the precaution to see whether the tracks were clear and, second, the manner in which he acted when the plaintiff's arm was struck—constituted some evidence upon which the jury could justly have predicated the conclusion that he was without the qualifications and experience essential to the operation of the machine with safety. And we have the right to assume, in support of the verdict so far as it may imply a finding that Minchin was incompetent to operate said machine, that, from their personal inspection and examination of the crane and its necessary appurtenances, whereby they were able to and doubtless did form an approximately accurate judgment as to the qualifications and experience essential to the proper operation of the machine, the jury concluded that the testimony disclosed that Minchin was altogether incapable of

properly operating said machine. At any rate, upon that phase of the case, we do not feel at liberty to declare that the conclusion of the jury is unwarranted. And, Minchin having testified that the officers of the defendant—the president, secretary, and vice-president—knew of his "past occupations and experience," which, until he became connected with the defendant, involved no duty appertaining to the handling of machinery of any kind, it is manifest that the jury were warranted in concluding that the defendant placed him in charge of the crane, knowing him to be incompetent to manage it with that degree of skill absolutely necessary to the operation of it properly or in such manner as that there would exist no unusual dangers or risk to those necessarily engaged in working on, around or about it. If, however, the evidence of defendant's knowledge of Minchin's incompetency be so slight as to make it doubtful whether the jury would have been justified in so finding, it is, nevertheless, true that, as stated, the officers of the defendant knew the nature of his occupations prior to the time he became an employee of the defendant, and knew that such occupations were in no way concerned with the duty of handling machinery. There is no evidence which discloses that the officers of the defendant made any investigation into the qualifications of Minchin to operate the crane, and, while the presumption is that the employer has done his duty in this regard (*Beasley* v. *San Jose Fruit etc. Co.,* 92 Cal. 388, [28 Pac. 485] ; *Still* v. *San Francisco etc. Ry. Co.,* 154 Cal. 569, [129 Am. St. Rep. 177, 20 L. R. A. (N. S.) 322, 98 Pac. 676]), yet "there can be no doubt under the authorities that the incompetency of an employee at the time of his employment may be of such a character that the evidence showing it will be legally sufficient to rebut the presumption that the employer used the requisite care in his selection, and make the question one for the jury. This is on the theory that the incompetency was of such a nature that a reasonable investigation would have disclosed it, and that, therefore, the employer either knew of it or omitted to make such investigation." (*Still* v. *San Francisco etc. Ry. Co.,* 154 Cal. 569, [129 Am. St. Rep. 177, 20 L. R. A. (N. S.) 322, 98 Pac. 676].) The case here clearly comes within the rule as thus stated.

But, under the record, the verdict is not required to rest alone on the negligence of the defendant arising from the incompetency of Minchin. There can be no kind of doubt that

the moving of the crane by Minchin, at the time of the accident, under the circumstances as admitted by him, was the grossest kind of negligence. According to his own testimony, he entered the cab of the crane and started the machine without having first looked out to see whether Camozzi was still on or near the tracks or in a position in which collision with his body would follow the moving of the crane. His excuse that he ''considered that he (Camozzi) had ample time to get out of the way'' is obviously no excuse at all. He knew when he entered the cab that Camozzi had not descended or attempted to descend the ladder, and it was, therefore, his duty, before starting the crane, to look and positively ascertain whether the plaintiff had or had not entirely removed himself from the tracks or the course along which the crane would travel.

As to the defense of contributory negligence, it is to be remarked that there is nothing in the testimony upon which this court can justly sustain the proposition that the finding implied from the verdict against that claim is without justification. It is true that Minchin testified that ''the plaintiff and I finished wiping the top of the rail off, and I instructed the plaintiff to go down, that I was finished with him and was going to start the crane.'' But opposed to this testimony was that of the plaintiff, who said that, immediately upon completing his work, he started down the ladder, and that it was at that time the crane was suddenly started. It was, of course, for the jury to say, assuming that there was any real conflict between Minchin and the plaintiff on that point, whether the plaintiff started to leave the tracks immediately upon finishing the work for the doing of which he had been required to go upon the tracks or unnecessarily loitered there after finishing his work.

The only fault found with the charge of the court is that that part thereof relating to the question of the alleged incompetency of Minchin was inapplicable, since, so the contention proceeds, there is no evidence supporting that theory of the plaintiff's case. It is not claimed that the instructions do not correctly state the law pertinent to negligence growing out of incompetency.

The reply to the above mentioned criticism of the court's charge is involved in the views we have expressed respecting the evidence.

We think the judgment and the order should be affirmed, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 28, 1915, and the following opinion then rendered thereon:

THE COURT.—The application for a hearing in this court after decision by the district court of appeal for the third appellate district is denied.

In denying such application we deem it proper to say that we are not satisfied that the evidence was sufficient to sustain a conclusion that the defendant was negligent in the matter of the selection of Minchin to operate the crane, and our denial is not to be taken as an approval of the conclusion of the district court of appeal in this respect. As stated in the opinion the verdict is not required to rest alone on any such negligence, and it is amply sustained by evidence showing negligence on the part of the defendant in the operation of the crane. As we understand the record, no claim was made by the answer that any injury received by plaintiff was caused by the negligence of a fellow-servant.