[Civ. No. 10651. First Appellate District, Division One.—April 17, 1939.]

RAYMOND KING, Respondent, v. THOMAS SCHU- MACHER et al., Appellants.

C. W. Dooling and Edwin V. McKenzie for Appellants.

George Olshausen, as *Amicus Curiae,* on Behalf of Appellants.

Clifton Hildebrand and Goodman & Brownstone for Respondents.

THE COURT.—An action under the Federal Employers' Liability Act against the trustees of the Western Pacific Railroad Company to recover damages for personal injuries alleged to have been sustained by the negligent acts of the defendants. A jury returned a verdict for plaintiff and the defendants have appealed from the judgment entered thereon.

The complaint alleged that plaintiff was employed by defendants on a ditcher engaged in repairing the main interstate line of the railroad near Poe, California; that while thus engaged the ditcher was so negligently operated and maintained that plaintiff's foot was run over and injured. The answer denied negligence and alleged as defenses, assumption of risk and that the injury complained of was due solely to plaintiff's negligence. The case was tried on two theories, namely, the negligence of the engineer in charge of the ditcher in moving forward while plaintiff was in a position of danger, and its negligent maintenance in that by reason of a broken axle on the drive shaft it was out of control at the time of the injury. At the conclusion of the evidence defendants moved for a directed verdict upon the ground that the evidence was legally insufficient to sustain a judgment in favor of plaintiff on either theory; also by separate motions they moved that the court withdraw from the consideration of the jury the issue raised by each theory. All of said motions were denied; and later defendants proposed certain instructions, which the trial court refused to give, withdrawing said issues from the jury, and directing that separate verdicts be rendered thereon.

Three main grounds for reversal are urged: first, that the evidence is legally insufficient to sustain a finding that the ditcher was negligently operated by the engineer, but on the contrary shows that the accident was proximately caused by plaintiff's attempt to do certain things, the danger of which was obvious to him and the risk of doing which he assumed, to wit, in attempting to get into the cab of the ditcher through a side door, and in attempting to board the ditcher while it was in motion; second, that the evidence is legally insufficient to support a finding that the broken axle was a proximate cause of the accident, and therefore that the trial court erred in refusing to grant defendants' motions for a directed verdict on that issue, and to withdraw said issue

from the jury; and third, that the trial court erred in refusing to direct the jury to return separate verdicts on said issues.

The ditcher consisted of a steam shovel mounted on a flat car. The apparatus was set on wheels which moved back and forth on rails laid upon and fastened to the platform of the car. It had what is known as a four-wheel drive, the moving power being transmitted to all four wheels. One lever controlled its movement upon the rails mentioned, and by this means it was moved backward and forward by the engineer. There were no brakes controlling its movements, this being accomplished by reversing the lever or moving it forward. At the time of the accident the axle transmitting power to one set of wheels was broken. This occurred about two weeks before the accident, and both the engineer and the plaintiff knew the fact. The ditcher crew consisted of the engineer and the fireman. On the day of the accident plaintiff was acting as fireman, his duties being to keep steam in the boiler, to sand the rails on the flat car, and otherwise assist in operating the machine, the engineer being his superior. According to plaintiff he was directed by the engineer just prior to the accident to sand the rails on the flat car, the sand being obtained from a nearby locomotive. When the sanding operation was completed he mounted the flat car in order to enter the cab of the ditcher, which he attempted to do through a side door. It was testified that it was usual for the fireman to enter the cab through this door. He had been told by the engineer that the ditcher would not be moved while anyone was standing on the flat car. There were no steps to aid ingress through the door mentioned and a chain was placed across the same. It was his intention to grasp the chain and raise himself. In order to do so he placed his left foot on one of the rails on the flat car. As he did this, the apparatus was moved back slightly and then forward about two feet, one of the wheels passing over his foot and pinning it to the rail. The engineer at the time saw the position of the plaintiff except that from the cab he could not see that his foot was upon the rail. According to the engineer he saw from plaintiff's facial expression that an accident had occurred and he had at once reversed the lever, thus releasing the plaintiff. A part of the foot was crushed and it was subsequently amputated. The ditcher was inspected by the jury and the trial court, and its operation explained, but the evidence was conflicting as to the exact

position of the parts immediately preceding and at the time of the injury. The plaintiff testified that when he mounted the flat car the boom was in a position lengthwise with the car and the apparatus was not moving. The engineer directed him to enter the cab but he was unable to do this by reason of the position of the boom. To enable him to enter it was necessary to wait until the boom was swung at an angle with respect to the car, and the apparatus was so constructed that the cab would revolve at the same time. The evidence fairly supports the conclusion that it was unnecessary in order to move the boom that the apparatus should be moved forward on the rails, and that the engineer was aware of the possibility of injuring the plaintiff if such a movement should be made. There was also testimony that the engineer had directed the plaintiff to enter the cab by another door, called the fireman's door, but according to the latter the door which he attempted to use was the usual means of ingress.

It is well settled that by the Federal Employers' Liability Act Congress took possession of the field of employers' liability in interstate transportation by rail, and that the rights and obligations of persons within its provisions depend upon the act and applicable legal principles as interpreted by the federal courts (*St. Louis etc. Ry. Co.* v. *McWhirter,* 229 U. S. 265 [33 Sup. Ct. 858, 57 L. Ed. 1179]; *Chicago M. & St. P. Ry.* v. *Coogan,* 271 U. S. 472 [46 Sup. Ct. 564, 70 L. Ed. 1041]), and an employee assumes the risk of dangers normally incident to the occupation in which he voluntarily engages. (*Gila Valley etc. Ry. Co.* v. *Hall,* 232 U. S. 94 [34 Sup. Ct. 229, 58 L. Ed. 521].) However, it is not his duty to exercise care to discover extraordinary dangers that may arise from the negligence of those for whose conduct the employer is responsible, but he may assume that the employer or his agents have exercised proper care for his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person under the circumstances would observe and appreciate them. (*Chesapeake etc. Ry. Co.* v. *De Atley,* 241 U. S. 310 [36 Sup. Ct. 564, 60 L. Ed. 1016].) This has been held to be the rule when the injury arises from a single act of negligence by the employer or his agent, creating a sudden danger to the servant of which the latter is without warning and could not reasonably have foreseen. (*Chicago*

178

R. I. & P. Ry. Co. v. Ward, 252 U. S. 18, 21 [40 Sup. Ct. 275, 64 L. Ed. 430]; Reed v. Director General, 258 U. S. 92 [42 Sup. Ct. 191, 66 L. Ed. 480]; Swank v. Pennsylvania R. Co., 94 N. J. L. 546 [111 Atl. 44]; 254 U. S. 638 [41 Sup. Ct. 12, 65 L. Ed. 451]; Illinois Central R. Co. v. Norris, 245 Fed. 926.) ■ The burden of proof on the issue of assumption of risk is upon the employer (Kanawha R. Co. v. Kerse, 239 U. S. 576 [36 Sup. Ct. 174, 60 L. Ed. 448]), and unless the evidence is such that ordinary minds would not differ as to the proper conclusion such questions are for the jury. (Chesapeake etc. Ry. Co. v. De Atley, supra.) ■ We are unable to agree with the defendants that, as was the case in Atlantic Coast Line Railroad Co. v. Davis, 279 U. S. 34 [49 Sup. Ct. 210, 73 L. Ed. 601], but one conclusion on both issues might reasonably be drawn from the evidence. As stated, the engineer was aware of plaintiff's position with the one exception, that the latter's foot was upon the rail, and it was his duty to use reasonable diligence in analyzing the situation. We are satisfied that the circumstances were such as to convey to the mind of an ordinarily prudent person that plaintiff was in a position where the movement of the apparatus as described above would imperil his safety, and such movement might reasonably be expected to cause injury. Where this is the case knowledge of the danger will be imputed. We are of the opinion, therefore, that the evidence on this issue, as well as that of assumption of risk, is sufficient to sustain a finding thereon in favor of plaintiff.

■ As to the other charge, that the ditcher was negligently maintained, the evidence shows that the axle transmitting power to one set of wheels was broken, and it is a fair inference from the testimony that due to this condition the movement forward and backward on the rails would not be as readily subject to control as would otherwise have been the case. However, the record clearly shows that notwithstanding this, the movement forward was stopped immediately upon the discovery by the engineer of the fact of the accident. It would appear, therefore, as defendants claim, that the evidence does not reasonably support the conclusion that the accident was caused or aggravated by said defect or might have been avoided had it not existed. ■ We are unable to agree with defendants, however, that failure of plaintiff to establish liability under this latter charge of neg-

ligence serves as ground for reversal of the judgment. As said by this court in affirming the judgment in *Walton* v. *Southern Pac. Co.*, 8 Cal. App. (2d) 290 [48 Pac. (2d) 108], involving a similar situation in an action founded also on federal statutes: "It is settled that where suit is brought upon two different theories, if there is evidence to sustain either of them and the verdict of the jury be a general one, the general verdict will stand . . . "

Defendants (in their supplemental points and authorities) concede that the Walton case "is squarely against" the position they have taken on this point, but they contend that the portion of the decision above quoted "is clearly wrong on principle"; and in a later brief they cite cases which they claim support their view. We have found nothing in any of those cases, nor in the arguments advanced by defendants in connection therewith to warrant the conclusion that the doctrine quoted from the Walton case is not the settled law of this state in this class of cases; and the authorities are abundant showing that it is. In California Jurisprudence (vol. 19, p. 675) the law upon the subject is summarized as follows: "A statement in a complaint of several distinct acts of negligence does not render the pleading subject to either a general or a special demurrer. In such a case a plaintiff may rely upon any one of the alleged acts of negligence as the proximate cause of his injury or upon all of said acts as operating together or concurrently in causing the damage. Accordingly, where several acts are pleaded, a general verdict for the plaintiff will not be set aside for want of evidence to support it if there is sufficient evidence of negligence to justify it upon one of the issues. Where each of the acts pleaded constitutes a separate cause of action, they should be separately stated, but a failure to do this merely renders a complaint demurrable upon that ground; it does not render the complaint subject to a general demurrer, or to a special demurrer for uncertainty." Furthermore, the doctrine set forth in the Walton case was restated and again applied by this court in the case of *Edgington* v. *Southern Pac. Co.*, 12 Cal. App. (2d) 200 [55 Pac. (2d) 553], which was also based on federal statutes; and numerous cases may be found not involving federal statutes but based nevertheless on two or more issues of fact, wherein the same doctrine has been declared and applied. Among them are *Sessions* v. *Pacific Imp. Co.*, 57 Cal. App. 1 [206 Pac. 653], and

*Merrill* v. *Kohlberg,* 29 Cal. App. 382 [155 Pac. 824], cited in the Walton case; also, *Worley* v. *Spreckels Bros. Com. Co.,* 163 Cal. 60 [124 Pac. 697] ; *Criss* v. *Angelus Hospital Assn.,* 13 Cal. App. (2d) 412 [56 Pac. (2d) 1274] ; *Hume* v. *Fresno Irr. Dist.,* 21 Cal. App. (2d) 348 [69 Pac. (2d) 483]. And it has been definitely held that said doctrine is controlling, notwithstanding reversible error may have been committed by the trial court in dealing with the unsupported issue (*Hume* v. *Fresno Irr. Dist., supra*), one of the cases so holding being where the trial court erroneously refused to instruct the jury that there was no evidence to sustain such issue (*Criss* v. *Angelus Hospital Assn., supra*). Moreover, an examination of the various cases discloses that in applying said doctrine the courts have not discriminated between cases like the present one wherein the complaint sets forth two (or more) acts of negligence in one count (*Verdelli* v. *Gray's Harbor etc. Co.,* 115 Cal. 517 [47 Pac. 364, 778] ; *Criss* v. *Angelus Hospital Assn., supra; Camozzi* v. *Colusa Sandstone Co.,* 26 Cal. App. 74 [147 Pac. 107]), and those like the Walton case, wherein each negligent act is made the subject of a separate count (*Sessions* v. *Pacific Imp. Co., supra; Merrill* v. *Kohlberg, supra*). It has been applied with equal force to both.

A different situation doubtless arises where the complaint contains two separate counts setting forth independent and unrelated causes of action calling for distinct relief such as the application of different measures of damage. But as will be seen, the present case is not of that class. ██ Here plaintiff alleged in one count that the accident was proximately caused by two negligent acts, liability under either of which called for the application of the same measure of relief. This plaintiff had the right to do (*Criss* v. *Angelus Hospital Assn., supra*), and any claim defendants may have had that said negligent acts should have been made the subject of separate causes of action must be deemed to have been waived by failure to demur specially on that ground (Code Civ. Proc., sec. 434). Nor is there any analogy between this case and *Barrett* v. *Southern Pac. Co.,* 207 Cal. 154 [277 Pac. 481], cited by defendants, for the reason that there one of the two issues submitted to the determination of the jury by the trial court in its instructions was purely an issue of law which the court itself should have decided instead of leaving it to

the jury to speculate as to what the law upon the subject was; and such was the real ground of the reversal.

Again referring to the Walton case, attention may be called to the fact that a petition for hearing before the Supreme Court was denied by that court; and later an application for a writ of review was denied by the Supreme Court of the United States (296 U. S. 647 [56 Sup. Ct. 308, 80 L. Ed. 461]); and while in later decisions (*Scott* v. *Industrial Acc. Com.*, 9 Cal. (2d) 315 [70 Pac. (2d) 940], and *Tipton* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 298 U. S. 141 [56 Sup. Ct. 715, 80 L. Ed. 1091, 104 A. L. R. 831]), it was pointed out that a mistaken view was adopted in the Walton case in dealing with the question of the application of the California Workmen's Compensation Act, the particular doctrine with which we are here concerned was in neither of the two later cases called into question.

█ Defendants make the further point that even though the law of this state is as stated in the decision in the Walton case, it is contrary to the doctrine of reversal followed in like cases in the federal jurisdiction, and that this being an action based on a federal statute, the rule of the federal courts is controlling. In opposition to this view, plaintiff cites certain cases which he contends demonstrate that no substantial conflict exists between the doctrines of the two jurisdictions. But whether or not such conflict does exist is not important, for the reason that it is well settled in both the federal and state jurisdictions, and the parties herein agree, that where as here an action founded on a federal statute is properly brought in the state courts, the law of the state, in the absence of any contrary provisions in the federal statute (and here there are none), is controlling in all matters of practice and procedure; and manifestly the process of determining on appeal whether error was committed by the trial court during the trial of the cause and if so whether such error is prejudicial and therefore constitutes ground for reversal, is a matter of practice and procedure. Referring to the judicial construction given those terms as they are used in the law, it has been said that together and in a larger sense they include the mode of proceeding by which a legal right is enforced, as distinguished from the substantive law which gives or declares the right (*Duggan* v. *Ogden*, 278 Mass. 432 [180 N. E. 301, 82 A. L. R. 765]; Anderson's Law Dictionary); whereas, singly, the word "procedure" has

been defined as the machinery for carrying on the suit, including pleading, process, evidence and practice, whether in the trial court or the appellate court, or in the processes by which causes are carried to the appellate court for review, or laying the foundation for such review (*Jones* v. *Erie R. Co.*, 106 Ohio, 408 [140 N. E. 366]), and the word "practice" is said to be the form, manner or order of instituting or conducting a suit or other judicial proceeding through its successive stages to the end in accordance with the rules and principles laid down by law or by the regulations and precedents of the courts. (Black's Law Dictionary, citing among other cases *People* v. *Central Pac. R. R. Co.*, 83 Cal. 393 [23 Pac. 303], and *Kring* v. *Missouri*, 107 U. S. 221 [2 Sup. Ct. 443, 27 L. Ed. 506].) Here, admittedly the enforcement of the legal rights given and declared by said federal act is committed concurrently to the state courts, and the act does not attempt to attach any conditions to the practice and procedure through which the jurisdiction of the state courts shall be exercised in the enforcement of such rights. (*Taylor* v. *Southern Ry. Co.*, 350 Ill. 139 [182 N. E. 805].) It follows, therefore, that the hearing and determination of the cause, not only in the trial court, but also on appeal, must be had in accordance with the rules, principles and precedents governing the practice in the state court. Moreover, a number of adjudicated cases might be cited in support of the conclusion reached herein. For example, the law of the forum has been held controlling with respect to nonunanimous verdicts (*Minneapolis & St. Louis R. R.* v. *Bombolis*, 241 U. S. 211 [36 Sup. Ct. 595, 60 L. Ed. 961]; *Winters* v. *Minneapolis & St. L. R. Co.*, 126 Minn. 260 [148 N. W. 106]; see, also, cases cited in 12 A. L. R., note XI, p. 713); and as to the submission of a cause on special verdicts (*Chesapeake & O. Ry. Co.* v. *Meadows*, 119 Va. 33 [89 S. E. 244]; *Kansas City So. Ry. Co.* v. *Leslie*, 238 U. S. 599 [35 Sup. Ct. 844, 59 L. Ed. 1478]; *Union Pac. R. R. Co.* v. *Hadley*, 246 U. S. 330 [38 Sup. Ct. 318, 62 L. Ed. 751]); also as to the matter of directing a verdict (*Brenizer* v. *Nashville, C. & St. L. Ry.*, 156 Tenn. 479 [3 S. W. (2d) 1053, 8 S. W. (2d) 1099]; *Dutton* v. *Atlantic Coast Line R. Co.*, 104 S. C. 16 [88 S. E. 263]); and the entry of judgment *non obstante veredicto* (*Marshall* v. *Chicago, R. I. & P. Ry. Co.*, 133 Minn. 460 [157 N. W. 638]; *Robertson* v. *Chicago, R. I. & P. Ry. Co.*, 180 Minn. 578 [230 N. W. 585].)

It is true, of course, that a substantive right or defense granted by the federal act cannot be lessened or destroyed by a state rule of procedure or practice; but as already shown, unless the act itself modifies or changes those rules of procedure and practice, the cause must be heard and determined in the same manner as would like causes arising under the law prevailing in the state. (See 45 U. S. C. A., p. 262, note 443.)

Also without merit is defendants' remaining point that the trial court erred in denying their request for special verdicts. Ever since the amendment of 1909 to section 625 of the Code of Civil Procedure, it has been optional with the trial court whether special issues shall be submitted to the jury; and its ruling in the matter is not subject to review on appeal unless there is manifest a clear abuse of discretion. (*De Martini* v. *Wheatley,* 126 Cal. App. 230 [14 Pac. (2d) 869] ; *Eaton* v. *Southern Pac. Co.,* 22 Cal. App. 461 [134 Pac. 801] ; *Estate of Witt,* 198 Cal. 407 [245 Pac. 197] ; *Oberholzer* v. *Hubbell,* 36 Cal. App. 16 [171 Pac. 436] ; 24 Cal. Jur. 904.) Here no abuse appears. To hold to the contrary would be to declare that in all negligence cases founded on more than one alleged negligent act, the defendant would be entitled as a matter of right to special verdicts; and obviously the very purpose of the 1909 amendment to said section 625 was to do away with that condition. The case of *Plyer* v. *Pacific etc. Cement Co.,* 152 Cal. 125 [92 Pac. 56], cited by defendants, was based on the provisions of said code section as they stood prior to the 1909 amendment.

The judgment is affirmed.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 15, 1939.