## THE STATE v. ED BOWEN, Appellant.

Division Two, January 4, 1915.

WITNESSES: Impeachment by Party Offering: Contradictory Statements. The party calling a witness cannot impeach him by showing his contradictory statements until he has become adverse, and accordingly a judgment of conviction is reversed and the cause remanded, where the State proved that one of its own witnesses had testified before the grand jury that the defendant had confessed to him, a matter he failed to touch upon in his testimony at the trial.

Appeal from Carter Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED AND REMANDED.

*L. O. Neider* and *J. F. Fullbright* for appellant.

*John T. Barker,* Attorney-General, and *W. T. Rutherford,* Assistant Attorney-General, for the State.

ROY, C.—A jury convicted defendant of rape committed upon Naomi Headrick, a female child under the age of 14 years. His punishment was fixed at five years in the penitentiary. A former appeal in this case resulted in a reversal on account of the erroneous admission of impeaching evidence. [247 Mo. 584.]

It would serve no good purpose to encumber the reports with a restatement of the facts except in so far as they are different from those on the former appeal.

On the second trial three physicians testified that calomel is of a nature tending to produce abortion, thus strengthening a weak point in the State's case on the former appeal.

Calvin Lane, a witness for the State, testified as to statements made by defendant to him as follows:

"Yes, before her death, he told me that she was pregnant, that he thought she was. He come to my place to call a doctor at the time. I met him at the gate and we talked some little bit. I asked him how the folks was and he said Naomi was sick, pretty bad sick, that she had taken the cholera morbus a few days before that, on Friday I think, and he told me thought there was something bad the matter with her. I asked him what, and he said he thought she was in a family way; I told him that certainly was not the case, a child like that, and he said he believed it was. I asked him who it could be and he said he didn't know for sure but that he would find out later; he said he thought it

might be Burnam's boy and not to say anything about it until he found out certain.''

He also testified that on the day after Naomi's death defendant told him not to cry, that he (witness) would get forgiveness. He was then asked whether he remembered any other statement made by defendant about the matter, and answered, ''If he said anything else, I don't remember it.'' This witness was recalled by defendant during the introduction of the evidence for defendant, but the evidence then elicited by the defendant from the witness did not in any material respect change or add to his testimony as given when first on the stand. Counsel for the State then examined the witness, and the following occurred:

''Q. Did you testify before that grand jury? A. Yes, sir.

''Q. I will read you this statement and ask you if that is your testimony? 'I know the defendant, his wife and this child. The defendant, Bowen, came to my house on Monday and wanted me to phone for a doctor. First called Chilton, then Odell. I asked him what was the matter and he told me that Naomi was sick and further said there was something bad the matter and that his wife thought so too. I says that can't be can it and her so young. He said that it really was and that no one but Huston Burnam was the man. I called the doctor for him. Bowen told me not to say anything about this until after the doctor came and see what he said. The night after the miscarriage we talked, Bowen and I, about the matter again, and I told him if he couldn't tell me the truth I didn't want him to tell me anything, that to bring in an innocent party would be 'most as bad as the deed itself and he. made a confession to me by saying, 'I am responsible for it,' and didn't accuse any other party. I also heard his mother ask him about the truth of the matter concerning him, and Bowen said it was as bad as it could be. He came to me again and asked me to pray for

him and further said he had got down on his knees and made it all well between him and his Lord but asked others to pray for him.  The girl said she didn't take any medicine to cause a miscarriage.'  Is that your testimony?

"Objected to by defendant as an effort to impeach their own witness, which objection was by the court overruled.  To which ruling of the court defendant excepted at the time.

"It is supposed to be, I signed it."

The foreman of the grand jury that found the indictment then testified that Calvin Lane testified as above shown before the grand jury, and Lane's evidence before the grand jury was read to the jury by the State, all done over the objection of defendant that it was an attempt to impeach the State's own witness.

There are two ways in which a witness may disappoint the party calling him.  He may merely fail to testify to all or a portion of the facts to which he was expected to testify; or he may go farther and testify adversely, in favor of the opposite party.  In State v. Burks, 132 Mo. l. c. 373, this court said:

*Impeaching One's Own Witness.*

"It has been ruled also in many of the other States that the mere failure of a witness to prove the fact for which he was called does not constitute him such an adverse or hostile witness as will justify the court in permitting a party to impeach his own witness.  [Shackelford v. State, 27 S. W. (Tex.) 8; People v. Mitchell, 94 Cal. 550; Hickory v. United States, 151 U. S. 303.]

"Accordingly it must be ruled upon the great weight of authority that a party cannot, either in a civil or criminal case, discredit or impeach his own witness by proof of contradictory statements previously made by his witness, unless he has been entrapped or misled by some artifice or statement to him or to someone upon whom the party had a right to

rely, or unless there is an express statute permitting such evidence.''

That case recognizes the difference between the case where the witness merely fails to testify, and the case where he becomes adverse.

In Clancy v. Transit Co., 192 Mo. 615, the witness became adverse. It was held that the party calling him was entrapped into putting him on the stand and was entitled to impeach him by showing his contradictory statements. That doctrine was affirmed in Beier v. Transit Co., 197 Mo. 215. Those last two cases did not discuss the distinction above mentioned. It may be confidently said that every authority which has discussed that distinction holds that a party calling a witness cannot impeach him by showing his contradictory statements unless he becomes an adverse witness as above explained. The following is a partial list of those authorities: 2 Wigmore on Ev., sec. 904, par. 8; People v. Jacobs, 49 Cal. 384; Chism v. State, 70 Miss. 742; Langford v. Jones, 18 Ore. 307; Worley v. Spreckels, 163 Cal. l. c. 70; Marugg v. Kells, 146 Ill. App. 394.

There are several reasons why a witness who has not become adverse should not be so contradicted. The first is this: Such contradictory statements are never used for any purpose except to impeach the witness. They are not to be considered by the triers of fact for any other purpose. On what theory is a witness to be impeached when he has merely failed to testify? It has been said that the contradiction of such a witness is the destruction of a straw man erected by the party himself, for its effect upon the jury. Another reason is, that such a method of contradiction if it did not open up the flood gate for the admission of hearsay evidence, would go much too far in that direction.

The English statute enacted in 1854 provided for the impeachment of one's own witness by evidence of

his contradictory statements when the witness, in the opinion of the trial judge, became adverse.

The witness Lane did not become an adverse witness as above explained, and we are constrained to hold that the contradiction of him by evidence as to his testimony before the grand jury was prejudicial error. The use which may be made of the transcript of a witness's testimony before the grand jury in refreshing the mind of such witness at the trial was fully considered in State v. Patton, 255 Mo. 245.

The judgment is reversed and the cause remanded for a new trial. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur.