Deubler v. United Rys. Co.

BERNHARD DEUBLER, Appellant, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Respondent.

St. Louis Court of Appeals. Argued and Submitted June 5, 1916.
Opinion Filed July 5, 1916.

1. **EVIDENCE: Character of Parties: Admissibility.** In an action for assault, evidence as to plaintiff's good character is inadmissible, where his character is not attacked.

2. **TRIAL PRACTICE: Sufficiency of Objection to Evidence: Leading Questions.** In an action for assault, after plaintiff had introduced evidence in chief tending to prove his good character, defendant called a witness as an adverse character witness, who, contrary to previous statements made to defendant's claim agent, testified that plaintiff's reputation for sobriety and peacefulness was all right. Counsel for defendant then asked him whether he had not made contrary statements to defendant's claim agent, and plaintiff's counsel objected on the ground that defendant should not be permitted to impeach its own witness. Defendant's counsel claimed surprise and counsel for plaintiff no longer urged his objection, and the witness was interrogated at length concerning his previous statements. Subsequently, another witness for defendant was interrogated as to whether the first witness had said anything about plaintiff being a disturber, and plaintiff's counsel stated that he wished to object on the ground that the question was leading. *Held*, that the first objection, concerning defendant's right to impeach its own witness, was not renewed by the second objection, and that the second objection was not sufficient to raise this question. *Held, further,* that if the question to which objection was made, was leading, it was within the power of the trial court to permit it to be asked in that form.

3. **WITNESSES: Modes of Impeachment.** There are various modes of impeaching a witness, the principal ones being by cross-examination, by disproving the facts stated by him, by the testimony of other witnesses, by evidence of bad character, of reputation, conviction of an infamous crime, bias for or against a party, or former statements contradictory of his testimony.

4. ————: **Impeachment of Own Witness: Surprise.** In an action for assault, where, after plaintiff had introduced evidence in chief tending to prove his good character, defendant called a witness as an adverse character witness, who, contrary to previous statements made to defendant's claim agent, which defendant relied upon, testified that plaintiff's reputation for sobriety and peacefulness was

all right, defendant had the right, on the ground of surprise, to interrogate him concerning his previous contrary statements and also to interrogate other witnesses concerning such statements.

5. **INSTRUCTIONS: Cautionary Instructions: Credibility of Witnesses.** Where defendant was surprised by evidence given by one of its witnesses, which was at variance with his previous statements, and introduced evidence tending to prove that he had made such variant statements, it was proper to give an instruction touching the credibility of witnesses.

Appeal from St. Louis City Circuit Court.—*Hon. Rhodes E. Cave,* Judge.

AFFIRMED.

*Henry E. Haas* and *John B. Dempsey* for appellant.

(1) The rule is firmly established in Missouri that a party cannot, either in a civil or criminal case, discredit or impeach his own witness by evidence of contradictory statements previously made, unless he was entrapped or misled by some artifice, or by some statement made to him or by someone on whom he had a right to rely, or unless there is an express statute authorizing the admission of such evidence. State v. Bowen, 263 Mo. 279; Rodan v. St. Louis Transit Co., 207 Mo. 392; Beier v. St. Louis Transit Co., 197 Mo. 215; Feary v. O'Neil, 149 Mo. 467; Imhoff v. McArthur, 146 Mo. 371; State v. Burks, 132 Mo. 363; Dunn v. Dunnaker, 87 Mo. 597; Brosius v. Lead & Zinc Co., 149 Mo. App. 181; Joyce v. St. Louis Transit Co., 111 Mo. App. 565; Creighton v. Modern Woodmen, 90 Mo. App. 378; Hickory v. United States, 151 U. S. 303; 10 Ency. Plead. & Prac., 316; Jones on Evidence (2 Ed.), secs. 853 and 854. (2) The reason for the rule is said to be that it would enable a party to destroy a witness if he spoke against him, and to make him a good witness if he spoke for him, with the means in his hands of destroying his credit if he spoke against him. And this could have no other effect than to coerce the witness. 2 Wigmore on Evidence, sec. 899; 32 Ann. Cases (1914 B.), 1120. (3) A party is not "entrapped" within the meaning of the

rule, where the witness merely fails to give evidence which he was expected to give. In such case, his credibility is immaterial, as he has done no damage. Before the witness can be impeached he must become "adverse;" that is to say, his testimony must be actually hostile and prejudicial to the party calling him. It is not enough that he disappoints the expectations of such party by failing to give beneficial testimony. State v. Bowen, 263 Mo. 279; State v. Burks, 132 Mo. 363; Hickory v. United States, 151 U. S. 303; 30 Amer. & Eng. Ency. of Law (2 Ed.), 1132; 32 Ann. Cases. (1914 B.), 1131; 1 Words and Phrases, p. 236, Title "Adverse Witness." (4) There is no statute in Missouri which authorizes a party, under any circumstances, to impeach his own witness. It could not be done at common law and the common law of England is the rule of action and decision in this State. Sec. 8047, R. S. 1909; Hickory v. United States, 151 U. S. 303; Best on Evidence, sec. 645; Wharton on Evidence, sec. 549; 2 Elliott on Evidence, sec. 985; Wigmore on Evidence, sec. 896. (5) The Clancy case relied on by the trial court is distinguished and explained in two subsequent decisions of the Supreme Court. Beier v. St. Louis Transit Co., 197 Mo. 215; State v. Bowen, 263 Mo. 279. (6) In the circumstances of this case it was error for the court to give of its own motion instruction No. 4, touching the credibility of the witnesses, since it tended to divert the attention of the jury from the real issue in the case to an issue of veracity between the defendant's own witnesses. Keeline v. Sealy, 257 Mo. 498, l. c. 527; Rodan v. St. Louis Transit Co., 207 Mo. 392. (7) Where objections to the admission of evidence, properly taken, have been overruled and exception saved, it is not necessary to repeat the objection when the same species of evidence is subsequently offered; and it has been held that where an objection to incompetent evidence has once been properly taken and overruled, it is not necessary or even proper to repeat the objection when the same evidence is subsequently admitted through other witnesses. If, however, a second objection is inter-

posed it need not repeat the specific grounds of objection. So where evidence has been excluded on a proper objection thereto, a general objection to an offer of substantially the same evidence thereafter will suffice. 8 Ency. Plead. & Prac., 229; 1 Thompson on Trials, sec. 705; 1 McQuillin's Missouri Practice, sec. 751; Schierbaum v. Schemme, 157 Mo. 1; Bailey v. Kansas City, 189 Mo. 503. (8) Indeed, it is said that if the inadmissibility of the evidence be apparent on its face, no casting around by the court for a ground of exclusion is necessary. 8 Ency. Plead. & Prac. 228, par. D.

*Boyle & Priest* and *Paul U. Farley* for respondent.

REYNOLDS, P. J.—This is an action commenced before a justice of the peace to recover damages alleged to have been sustained by plaintiff while a passenger on a car operated by defendant, it being charged that defendant, by its agents, servants and employees, with force and arms, and without any just reason or excuse, wrongfully, unlawfully and maliciously, made an assault upon plaintiff and beat, pounded and bruised him in his person and damaged him in his property. Plaintiff recovering before the justice, the cause was appealed to the circuit court, where on a trial before the court and a jury, there was a verdict for the defendant from which planitiff has duly appealed.

The errors assigned are to the action of the court in permitting the defendant to impeach its own witness, and in giving, of its own motion, an instruction as to the credibility of witnesses, and to error in refusing to grant plaintiff a new trial. It is stated in the abstract before us that plaintiff, to sustain the issues on his part, offered and introduced evidence tending to prove the allegations of his petition, and that there were no witnesses to the assault other than the participants, and that without objection by defendant the plaintiff also introduced evidence in chief tending to prove his good character.

This is all the evidence which the abstract furnished by appellant sets out, except that the testimony

of a police officer named Scherzinger, a witness called by defendant, and that given by one Callahan, recalled by defendant after Officer Scherzinger had testified, is given in full.

Referring to this it appears that Officer Scherzinger, on direct examination by counsel for defendant, testified that he was a member of the metropolitan police force of the city of St. Louis and had been such for six years and knew plaintiff. Counsel for defendant then asked him if he was acquainted with the reputation of plaintiff for sobriety and peacefulness, and he answered that he was. He was asked what it was, and he answered, "It is all right." He further testified under examination by counsel for defendant, that he had been subpoenaed on the part of defendant, and was asked if he had talked with anybody about this case, to which he said, "No." Counsel for defendant then asked him this question: "Didn't you talk with this man," indicating one Slough, "the claim agent?" Witness answered, "Why, yes." Whereupon counsel for plaintiff interposed, "We object upon the ground that he can't impeach his own witness." Whereupon counsel for defendant said: "I claim surprise." The Court: "It is clearly a case of surprise. He is entitled to impeach him, if he can." To this ruling counsel for plaintiff excepted.

The witness then testified on further examination by counsel for defendant, that he had been subpoenaed and that accompanying the subpoena was a card asking him to call at the office of the defendant; that he called there and had talked with Mr. Slough. He was asked if he had said anything to Mr. Slough about plaintiff drinking, to which he answered: "Why, they asked me if I knew him, and I told them, 'Yes,' and he says: 'How long have you known him,' and I says, 'All my life.' And he says, 'What do I know? Is he a drinking man?' I said, 'Yes; he drinks occasionally. I have seen him already drinking.' " He was asked: "Isn't it a fact that in that conversation you characterized him as a 'booze-fighter?' " to which he answered, "No, I

don't know as I said that he was a booze-fighter." He was asked if he did not know that he had said that, and he answered, "No." Asked when this conversation took place between him and the claim agent, he said that it was the day before the trial. Asked if he did not now know what he then said, he answered, "No; I don't know if I called him a booze-fighter. Q. Didn't you say he was a disturber? A. Not as I remember. Q. Well, will you state now whether or not you said yesterday in that conversation that you are referring to that he was a disturber? A. No. I don't know that he ever dis-- turbed anybody." Asked who was present at this con- versation, he named, among others, Mr. Callahan. He further testified that he knew the plaintiff well but had not seen him since the time of this conversation referred to and had not seen him for three months; had not talked to him the morning of the trial; that no one else had talked to him since the time of the conversation when he said he (plaintiff) was a drinking man. Asked what else he said besides that plaintiff was a drinking man, he answered: "Well, all I says, that he drinks, and you know he is around when he is drinking." Asked what he meant by that, he said, "Well, I said he talks loud. Q. Well, he is not mean; that is what you meant to say by saying he is not a disturber? A. No; he is no disturber, at all. Q. But he doesn't object to a little friendly fight now and then, does he? A. Not as I know of. I never knew of him fighting. Q. He doesn't do anything but talk loud; that is all you had reference to, is it? A. That is all."

The witness was then turned over to counsel for plaintiff for cross-examination, and answering questions of that counsel, he said that he had been served with a subpoena which he produced and which required his ap- pearance before the court in which the case was pending- at ten-o'clock a. m., on March 2, 1914, to testify as a witness in the cause on behalf of defendant, and that there was a card attached to this subpoena asking him to call at the office of the United Railways Company, giving its location, at nine o'clock of the date set for the

trial (that is, ten o'clock a. m., March 2nd, but in point of fact the trial did not come off until the following day, March 3rd); that in response to this card he called at the office of defendant at nine o'clock, March 2nd. He further testified on this cross-examination that he had known plaintiff for twenty-five years and had never known of his being charged with disturbance of the peace, or drunkenness, or with assault and battery, or with any offense against the laws of the State of Missouri or the city of St. Louis, although he knew that he drank and was not a teetotaler.

On redirect examination this witness testified that he had gone voluntarily to the office of defendant and when he got there there were witnesses in a number of cases to which defendant was a party, present, these cases pending in other divisions of the circuit court; that the claim agent told these several witnesses when the case in which they were subpoenaed was coming up and when to go over to the court, and if the case was not coming up right away, the claim agent told them to go about their business and he would let them know when to come back.

Defendant then recalled the witness Callahan, who testified, on direct examination, that he was present at the time of the conversation the day before between Officer Scherzinger and Mr. Slough. Asked if he remembered what Officer Scherzinger had said at that time in regard to plaintiff, witness answered: "Well, he said he knew him all his lifetime, and they went to school together; and he was windy and a booze-fighter; and he left the impression that he was a hard case, you see." Counsel for defendant then asked this witness: "Did he (Officer Scherzinger) say anything about him being a disturber?" Whereupon counsel for plaintiff said: "I certainly want to object; certainly, the objection on the ground that Mr. Farley's question is leading." The Court: "That is the same question he put to the previous witness. He may answer." This ruling of the court was excepted to by counsel for plaintiff and witness answered that Officer Scherzinger had said that

plaintiff "was a disturber and a booze-fighter, and no good;" that he had known him "all his lifetime and they went to school together." On cross-examination by counsel for plaintiff the witness testified that he was not acquainted with, plaintiff; might have heard of him before but had no dealings with him.

This is practically all the testimony that is brought up to us by this abstract.

In overruling the motion for a new trial the learned trial court handed down a memorandum opinion, which has been brought up to us by appellant. In this memorandum the court said that counsel for plaintiff, in support of the motion for a new trial, urges particularly as error, the action of the court in allowing defendant to impeach its own witness, Officer Scherzinger. The learned trial court says of this:

"That counsel overlooks the fact that when the impeaching testimony of which he now complains was offered, he failed to object thereto, or to sufficiently call the court's attenton to the fact that he was objecting thereto on account of the fact that defendant was impeaching its own witness. The record discloses the fact that defendant placed Officer Scherzinger on the stand, and in reply to counsel for defendant's questions it was immediately evident to the court that it was a clear case of surprise; and Officer Scherzinger himself testified that he had, shortly prior to the trial, been to the defendant's office or witness room and had there made certain statements, which were, in the opinion of the court, contradictory of his testimony. To the cross-examination of Officer Scherzinger, bringing out these facts, counsel for plaintiff objected, on the ground that defendant was impeaching its own witness. Mr. Farley (counsel for defendant) then states that he claimed surprise. Counsel for plaintiff then no longer urged their objection, and counsel for defendant was allowed to cross-examine Scherzinger at length. At the completion of the examination of this witness, the defendant called one Callahan, and offered to prove by him that Scherzinger had, shortly prior to the trial and in the witness

room of the defendant company, made statements inconsistent with his testimony at the trial. To the questions seeking to bring forth this evidence, counsel for plaintiff objected, stating, as the sole ground of his objection, that the question was leading; which objection was overruled, and the witness was allowed to testify. So that the record does not disclose a sufficient objection to this testimony to allow plaintiff now to complain of the action of the court.''

The trial judge further said that even if this objection of the counsel was sufficient ''the court is of the opinion that there was no error whatsoever in allowing the defendant to show the prior statements of this witness. In the opinion of the court there was a clear case of surprise, together with such action on the part of this witness, namely, going to the defendant's witness room and giving his statement shortly prior to the trial, as to, in the words of the Supreme Court, 'entrap' the defendant; and under such circumstances the rule, as understood by this court, is that a witness may be impeached by showing his prior inconsistent statements.'' The court cited in support of this Clancy v. St. Louis Transit Co., 192 Mo. 615, 91 S. W. 509.

The learned counsel for appellant insists with great earnestness, that the objection which he made to the question propounded to Officer Scherzinger by counsel for defendant, namely, ''We object upon the ground that he can't impeach his own witness,'' was carried forward when the witness Callahan was under examination and was asked if Officer Scherzinger had said anything about plaintiff being a disturber. That objection, as we have seen, is: ''I certainly want to object; certainly, the objection on the ground that Mr. Farley's question is leading.'' As noted by the learned trial judge, when counsel for appellant made his first objection, which he placed upon the ground that he could not impeach his own witness, counsel for defendant stated that he was asking this impeaching question on the ground of surprise and, as noted, the court held that it was clearly a case of surprise and that counsel for

defendant was entitled to impeach his own witness if he could on that ground. That is the law, as said by the trial court, and as we shall hereafter show, if this was a case of surprise. It is reasonably clear that this was a case of surprise. Relying upon what it is claimed Officer Scherzinger had said the day before, defendant put him on the stand, solely as a witness to impeach the character of the plaintiff. Not only had Officer Scherzinger then made directly contrary statements, statements entirely inconsistent with the testimony which he gave at the trial, but it is evident that counsel for defendant relied upon that witness giving the same testimony when placed upon the stand at the trial. This is shown, not only by the fact that defendant put him on the stand solely as an impeaching witness to the character of plaintiff, but by the facts that he had allowed plaintiff, without objection on the part of defendant, to introduce evidence tending to prove the good character of plaintiff. Surely testimony as to the good character of plaintiff was not admissible, in a case such as this, when the good character of plaintiff had not then been attacked. Clearly this was allowed to come in without objection by counsel for defendant, because that counsel relied on the fact that he had, in the person of Officer Scherzinger, a witness to meet his testimony of good character. He clearly refrained from making objection to this testimony of good character by reliance upon what he expected to prove by Officer Scherzinger and was entrapped into placing the officer on the stand as an adverse character witness. The learned trial court, with the witnesses before him and a full knowledge of what had taken place in the conduct of the trial, correctly held that it was a case of surprise of counsel for the defendant.

Learned counsel for appellant claims that the objection as to impeachment was renewed, when, in answer to the question put to witness Callahan, as to whether Officer Scherzinger had said anything about plaintiff being a disturber, the learned counsel for appellant said: "I certainly want to object; certainly, the objection on

the ground that Mr. Farley's question is leading.'' We think that the view taken of this objection by the trial judge is correct. We do not think that this was sufficient objection to the introduction of impeaching testimony. It was not an objection on the ground of lack of power to impeach one's own witness, but was distinctly or, as counsel says, ''certainly'' placed on the ground that the question was leading. Granting that it was leading, it was within the discretion of the trial court to here allow a leading question.

There are various modes of impeaching a witness, or by which his credit as a witness may be impeached. ''The principal ones are by cross-examination; by disproving the facts stated by him, by the testimony of other witnesses; by evidence of bad character, of reputation, conviction of an infamous crime, bias for or against a party, *or former statements contradictory of his testimony.*'' (Italics ours) [30 Am. & Eng. Ency. (2 Ed.), p. 1062, sec. VII.]

It is further said in the same work (page 1130, par. C and 2):

''It frequently happens that a party is entrapped into calling a hostile and unscrupulous witness, who has given one account of a state of facts before the trial, but gives a materially different account on the witness stand. This circumstance has given rise to much discussion, and no little contrariety of opinion, as to how far a party thus surprised and deceived may impeach such a witness by proving his statements out of court. If a witness unexpectedly gives material evidence against the party who called him, such a party may, for the purpose of refreshing the memory of the witness and awakening his conscience, ask him if he did not, on a particular occasion, make a contrary statement. Thus far the authorities are agreed, but the question is, should the inquiry stop here. If the witness admits that he has made a contrary statement, there is, of course, no necessity for other evidence of it, and according to many weighty decisions, if he denies making the imputed statement, the party cannot be allowed to prove it by

other witnesses where it would not be admissible as independent evidence, and can therefore have no effect but to impair the credit of the witnes with the jury. On the other hand, it has been urged with much reason that a party should not thus be placed at the mercy of a designing witness, and there are many cases in which it is held that where a party has been surprised and entrapped by his own witness, the court may, in its discretion, allow him to call other witnesses to prove that such treacherous witness had previously made statements contrary to his testimony, not for the purpose of proving the truth of such previous statements, but to show the treachery of the witness and to set the party right before the jury. To this effect is the great weight of modern authority.''

This, we think, is the law in our State as announced in the case cited by the learned trial judge, namely, Clancy v. St. Louis Transit Co., supra. The learned counsel for appellant claims that this Clancy Case is distinguished and explained in two subsequent decisions by our Supreme Court, namely, Beier v. St. Louis Transit Co., 197 Mo. 215, 1. c. 234, 94 S. W. 876, and State v. Bowen, 263 Mo. 279, 172 S. W. 367. We do not think that the decision in either of those cases in any way militates against what was said by the court in the Clancy case.

In the case at bar the term ''impeachment,'' as used, goes more to contradiction; more to prove former statements made by the witness, differing from those made on the witness stand and was here admissible. Using the term ''impeachment'' in the sense of contradiction, it is not correct to say, as does counsel for appellant, that the respondent could not impeach his own witness. So, even granting that counsel for appellant had duly excepted to impeaching evidence of this kind, the objection was not well taken.

Our conclusion is, as to this part of the case, that we find no error in the action of the trial court in the admission of the challenged testimony.

It is further claimed that under the facts in this case, it was error for the court, of its own motion, to give an instruction touching the credibility of witnesses. It is true that it has been held in several cases by the Supreme Court and by our court, that an instruction of this character is only to be given when there is a conflict of evidence, either among the witnesses or in the testimony of the witness himself. We think the latter situation was presented here. This officer had testified on the witness stand to the good character of plaintiff, whereas, as shown by testimony in the case, and which we have held is properly admitted, he had stated when subpoenaed as a witness and about to give his testimony, and in answer to questions from the representatives of defendant, that his character was not good in the way that he was a disturber and quarrelsome, to put it mildly. In the light of this contradictory testimony, it was proper to instruct the jury as to the credibility of the witnesses, which the court here did generally and not by particular reference to any witness.

Our conclusion is that there is no error in overruling the motion for a new trial. The judgment of the circuit court should be and is affirmed. *Nortoni* and *Allen, JJ.,* concur.