### RANDAZZO et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.   July 23, 1924.)

No. 6571.

1. **Criminal law ⊜⇒1177—If one of sentences running concurrently lawful, conviction must be affirmed.**

Even if all legal elements in one count were included in another, this constituted error at best as to one count alone, and then only if separate punishments were assessed and made to run consecutively, and not concurrently.

2. **Criminal law ⊜⇒528, 673(4)—Competent evidence of guilt of one of two defendants held admissible.**

Any competent evidence of guilt of one defendant is admissible, regardless of whether it tends to prove guilt of both; most that codefendant is entitled to being charge that confessions or admissions of other do not tend to prove his guilt.

3. **Criminal law ⊜⇒824(2)—Court's omission to define robbery held not error, where fact of robbery admitted, and no request made.**

Where, in prosecution for robbery, accused's counsel stated that fact of robbery was not disputed, defense being alibi, this amounted to admission that there was robbery, and it was not error for court to omit to define robbery, in absence of request to charge.

4. **Post office ⊜⇒45—Son of postmaster, though not officially appointed nor sworn, held in "lawful charge, control, or custody" of mail, within statute as to robbery.**

Son and employé of postmaster, who, under orders of father's partner, who had contract to transport mail, was engaged in transporting mails, though never officially appointed nor sworn, was in "lawful charge, control, or custody," within Penal Code, § 197 (Comp. St. § 10367), at time of robbery; quoted words having ordinary significance, "charge" and "custody" being synonymous, and connoting, not only control, but physical possession, and "control" being slightly broader in lacking implication of physical possession.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Charge; Control; Custody.]

5. **Witnesses ⊜⇒380(1)—Rule as to cross-examining or impeaching own witness stated.**

Party calling witness, when surprised by affirmative evidence which aids adverse party, may cross-examine witness to show former statements contrary to testimony given; but, where witness merely fails to testify in favor of party calling him, he cannot be cross-examined nor impeached by such party.

6. **Criminal law ⊜⇒1170½(5)—Government's cross-examination of own witness as to former statements held harmless, but, if harmful, waived by defendants' cross-examination.**

Where government's witness, cross-examined by government, denied having made statements hurtful to defendants, and question whether he had not made affidavit to that effect was withdrawn, whereupon defendants' counsel cross-examined him to show that any such statement had been made under duress or in hope of amelioration of own situation, no hurtful evidence was elicited, and, even if it were hurtful, it was waived by defendants' cross-examination.

7. **Post office ⊜⇒50—Evidence of accused's guilt of robbing mail matter held sufficient to go to jury.**

In prosecution for robbery of mail matter, in violation of Penal Code, § 197 (Comp. St. § 10367), evidence of accused's guilt *held* sufficient to go to jury.

---

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. **Criminal law ⬡�þ1038(3), 1056(1)—Objections to failure to charge cannot be raised for first time on appeal.**

Where defendant does not except to charge made, nor request more explicit charge, he cannot on appeal object to omissions involving no vital question.

In Error to the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

Isadore Randazzo and another were convicted of assaulting and robbing a person having mail matter in his lawful charge, and they bring error. Affirmed.

J. Francis O'Sullivan and M. J. Henderson, both of Kansas City, Mo. (Harry Friedberg, James M. Rader, Frank Rader, Clarence Wofford, and Bert S. Kimbrell, all of Kansas City, Mo., on the brief), for plaintiffs in error.

Charles C. Madison, U. S. Atty., of Kansas City, Mo. (Harvey Roney, Asst. U. S. Atty., of Independence, Mo., and Charles S. Walden, Sp. Asst. U. S. Atty., of Joplin, Mo., on the brief), for the United States.

Before SANBORN and LEWIS, Circuit Judges, and FARIS, District Judge.

FARIS, District Judge. Isadore Randazzo and Tony Evola, herein plaintiffs in error, were convicted, upon a trial on an indictment in two counts, which charged them with violating the provisions of section 197 of the Penal Code (Comp. St. § 10367), for that they assaulted with intent to rob one Ballard Todd of certain mail bags and mail matter, then and there in his lawful charge, control, and custody, and by the second count, for that they perpetrated such robbery, by putting the life of such custodian in jeopardy, by the use of dangerous weapons. To reverse this conviction they bring the case here by this writ of error.

[1] The court fixed the punishment of each of the defendants at 10 years' imprisonment in the penitentiary on the first count, and 25 years on the second count, sentences to run concurrently. In the light of the latter fact, some four assignments of error, bottomed upon the alleged illegality of a conviction upon both counts, under the evidence offered, and the refusal of the court to require the government to elect on which count it would proceed, fall out of the case. Section 197 of the Penal Code denounces, as crimes, both of the offenses of which defendants were convicted. If, because there was here present, among the facts in evidence, a showing that all of the legal elements in count 1, were also included in count 2, this could have constituted error, at best, as to one count alone, and then only in a case wherein separate punishments were assessed, and such punishments made to run consecutively and not concurrently, as here. Stewart v. United States (C. C. A.) 300 Fed. 769, decided June 12, 1924.

[2] It is contended that there was error, as against defendant Evola, in the admission of certain evidence which tended to prove the guilt of Randazzo, but which had no reference to said Evola, and neither tended to prove his guilt or demonstrate his innocence. There is no.

⬡�þFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

merit in this contention. The evidence complained of affected Randazzo alone. He was being tried jointly with Evola. Any competent evidence of Randazzo's guilt was admissible in the trial of the case, whether such evidence tended to prove the guilt of one or both of the defendants. The cases cited by counsel for defendant Evola are cases wherein the confession of one defendant, jointly tried with another, were admitted against such other, though containing evidence of the guilt of the defendant, who had no part in the confession. Of course, many cases hold that this would be error; but that is not the situation here.

The most that defendant Evola could have asked for, or was entitled to, was a charge that alleged confessions or admissions, made by Randazzo, did not bind Evola, and did not tend to prove his guilt. This Evola did not request, nor did he ever at any time, nor in any way, call the matter to the attention of the trial court. As forecast, the situation might have been different, had the alleged confessions of Randazzo, made after the commission of the crime, connected Evola with the commission thereof.

[3] It is urged as error that the trial court did not in his charge technically define robbery. This contention is borne out by the record; but during the trial counsel for defendants objecting to certain details of the hold-up, stated that the robbery was not disputed. This amounted to saying that it was admitted; that no further formal proof of it need be offered by the government. This admission was wholly consistent with the defense, which was an alibi; in effect, that, though concededly there was a robbery committed, it was not committed by the defendants. No charge was requested by defendants, nor was the attention of the court called to the omission, so to charge. Throughout the case, counsel for defendants treated the fact of robbery as a conceded one. Clearly, then, it was not error for the court to omit to define robbery.

[4] We think there is no merit in the contention that Ballard Todd, was not, when robbed, a person in the lawful charge, control, and custody of the United States mail, of which he was robbed. The words "lawful charge, control, or custody," as used in section 197 of the Penal Code, are, we think, words which are used in their ordinary meaning and significance, as words of the English language. If Todd had stolen this mail bag, and thereafter had been by defendants robbed of it, there might arise some question as to the jurisdiction of a federal court to take cognizance of the matter, for in such case his custody would have been unlawful and not lawful. But here the facts are that Ballard Todd was the son of the postmaster at Sugar Creek post office. This postmaster conducted a hardware store, in partnership with one Gates, who had the contract to transport the mail to and from the post office to the railroad station. Ballard Todd was an employé in this partnership hardware store, which was operated in a building near that in which the post office was kept. He was under the direction, as to the work which he was to perform, of both the postmaster and Gates. Under orders from Gates, he was engaged in transporting the mail from the station to the post office when the robbery in this case occurred.

We assume, after a somewhat diligent search and absent, as here in the briefs, any citation of authorities, that the precise point is one of first impression. The reason of the thing, and a fair construction of the statute involved, lie in favor of holding that Todd, though never officially appointed or sworn, as a clerk or other similar custodian of the mail, was in fact in lawful charge, control, and custody of it at the time of the robbery. As already indicated, the words "lawful charge, control or custody," as used in the statute, have no technical meaning; they are used in their plain and ordinary significance. The word "charge," when used, as here, as a noun, has as one of its synonyms "custody." Both words connote, not only control, but include as well, though they do not require, the element of physical, or manual possession. The word "control," as used in this statute, is a slightly broader word, in that it lacks the implication of physical possession. Because each of the three words used in this statute are also modified by the necessity that under section 197, supra, the taking of the mail and mail bag must be by robbery, such taking and such disturbance of charge, custody, or control must needs occur in the presence of him who has such charge, control, or custody. The mail may be by the robbery denounced by this section taken, either out of the physical or manual possession, i. e., *charge and custody* of the lawful custodian, or in his presence, i. e., while such mail is in the *control* of such custodian, though not necessarily in his physical or manual possession. It has been held, and in this view we agree, that it is not necessary that the custodian of the mail or mail bag which is the subject-matter of the robbery shall theretofore have taken an oath of office, in order to constitute him who is thus robbed one *intrusted with the mail*, as the statute then read (United States v. Wilson, 28 Fed. Cas. loc. cit. 709). Since then the statute requires no more than lawful custody or control, and, since Todd had this sort of custody and control, the point is disallowed.

[5] It is most earnestly argued by counsel for defendants that the trial court erred in permitting the assistant district attorney to cross-examine Ray and Boreman, who were called as witnesses for the United States. The law on this point presents no particular difficulty. In its simplest statement it is that, when a party calls a witness and is surprised by affirmative evidence given by the witness, which actually aids the adversary party, the party calling the witness may cross-examine him, and show statements made by him which are contrary to the testimony given by him on the witness stand. State v. Bowen, 263 Mo. 279, 172 S. W. 367; Hickory v. United States, 151 U. S. 303, 14 Sup. Ct. 334, 38 L. Ed. 170; Swift v. Short, 92 Fed. 567, 34 C. C. A. 545; St. Clair v. United States, 154 U. S. 150, 14 Sup. Ct. 1002, 38 L. Ed. 936; People v. Jacobs, 49 Cal. 384; Chism v. State, 70 Miss. 742, 12 South. 852; Langford v. Jones, 18 Or. 307, 22 Pac. 1064; Worley v. Spreckels, 163 Cal. 70, 124 Pac. 697; Marugg v. Kells, 146 Ill. App. 394; Clancy v. Transit Co., 192 Mo. 615, 91 S. W. 509. But when the witness merely fails, when called, to testify in favor of the party calling him, as he was expected to do, but says nothing which tends to aid the case of the adversary party, he cannot be

cross-examined or impeached by the party who calls him. State v. Bowen, supra; State v. Patton, 255 Mo. 245, 164 S. W. 223; Shackelford v. State (Tex. Cr. App.) 27 S. W. 8; People v. Mitchell, 94 Cal. 550, 29 Pac. 1106; Hickory v. United States, supra.

Both phases of the above point are presented in the instant case. Here the witness Boreman, called by the United States, to the expressed surprise of counsel who had called him, made statements in his testimony which hurt the government's case and were materially helpful to the defendant Randazzo. In such case, as said in the rule above stated, the government had the right, on the ground of surprise, to cross-examine Boreman, and to show that the government, which produced him and in effect vouched for him, was surprised, for that he had theretofore made statements, on which the government relied, which were at variance with the testimony given by the witness when on the stand. For these reasons, cross-examination was permissible, and there is no merit in this contention urged, so far as concerns the cross-examination of this witness.

The situation as to the witness Ray is somewhat different on the facts. This witness, when on the stand, failed to testify as counsel for the government confidently expected he would. As the basis for this expectation, the government relied on an alleged statement made by the witness, to the assistant district attorney, which, it was intimated, was had in a conversation with counsel for the government and later embodied in an affidavit. But Ray gave no evidence in any way helpful to the defendants, nor did he aid the case of the government. In short, his testimony was wholly colorless and negative in probative effect. In such case, any showing of any former statements of the witness, in which he said things hurtful to defendants was inadmissible.

[6] But here the question of fact comes into the case, to modify the rule. This alleged statement or affidavit was neither offered, nor given orally, in evidence to the jury, and when the witness Ray was asked if he had not made such a statement, he categorically denied it; and, while he was asked if he had not made an affidavit to the effect that Randazzo had made admissions to him, this question was not answered and was subsequently withdrawn by counsel for the government. Act Feb. 26, 1919, 40 Stat. 1181; Rich v. United States (C. C. A.) 271 Fed. 566. Thereupon defendants' counsel cross-examined this witness at great length, in an effort to show that any statement made by this witness had been made either under duress, while in custody on a criminal charge, or in the hope of an amelioration of the witness' own situation, touching crimes with which the witness himself then stood charged. We conclude, then, that for these reasons, and because no hurtful evidence was elicited by inadmissible methods (Rich v. United States, supra), and because, even if there had been hurtful evidence elicited, defendants waived it by the methods they themselves used in cross-examining this witness.

[7] We think there is no merit in the contention that the evidence adduced upon the trial was, upon the point of the guilt of defendants, insufficient to take the case to the jury. Two witnesses who were present at the robbery—Ballard Todd, who had charge of the mails

when the robbery occurred, and Richard Corwine, a boy companion of Todd, who was riding in the mail truck with the latter—positively identified defendant Evola as being one of the three or four men taking part in the robbery. The witness Corwine likewise positively identified defendant Randazzo as a participant in the robbery; while Todd, though not positive as to the identity of Randazzo, yet gave it as his belief that Randazzo was one of the robbers. Such doubt as was subsequently expressed by the witness Todd upon his cross-examination, was under the circumstances a matter for the jury. Moreover, as to Randazzo, there was another positive identification, by another witness and much other corroboration of the fact that he aided in committing this robbery. Upon such facts, the least that can be said is that the evidence made out a case for the triers of fact, and therefore the trial court committed no error in refusing to give the peremptory charge to acquit defendants, which was requested at the close of all the evidence.

[8] Lastly, it is contended that the court erred in failing to charge that the jury had the right to acquit one or both of the defendants, according as the jury might find the facts to warrant. In fair effect, the court did charge in such wise upon this point as to acquaint an intelligent jury that they had this right. But, even if the court had failed in this, no exception was taken to the charge, and no request was made for a more explicit and succinct charge upon the point. This is true touching numerous alleged errors as to the charge of the court as given, and as to his alleged failure to charge. Defendants may not stand silently by, in a case involving no vital question of omission to charge, and then raise, for the first time here, points germane to that here urged. Carson v. Jackson, 281 Fed. 411, 52 App. D. C. 51; Rosen v. United States (C. C. A.) 271 Fed. 651.

We think the evidence was ample to sustain the verdict, that the court committed no error meet for reversal, and that the case ought to be affirmed; and so it is ordered.